Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

YOST AND OTHERS V. CRITCHER.

November 17, 1910.

Reheard

November 16, 1911.

Absent, Cardwell, J.

1. PARTNERSHIP—*Fraud—Confidential Relations—Good Faith—Failure to Disclose Facts.*—Where several parties buy land together for the purpose of reselling it at a profit, and the title is conveyed to one of them as trustee, and the share of each in the profits is fixed, the contract between them is in the nature of a partnership agreement, and imposes upon each, in transactions among themselves, the utmost good faith, and a full and frank disclosure of all within his possession or knowledge that affects the value of the interest of the others. A failure on the part of some of the parties to disclose to another, who is ignorant of the facts, valuable offers for the property or a part of it, or other known facts affecting its value, and the purchase, directly or indirectly, of his share for an inadequate price, or permitting him, under such circumstances, to sell to another at a grossly inadequate price, and subsequently acquiring his share or interest, is a fraud upon the rights of the vendor, and the property so acquired by them will be impressed with a trust in favor of the vendor, and he will be awarded his share of the profits made by a subsequent sale of the property.

2. PURCHASERS—*Notice—Reacquisition of Property.*—Generally a purchaser with notice from a purchaser without notice acquires good title, but this rule is subject to the exception that if the purchaser with notice sells to a purchaser without notice and afterwards reacquires the property, he does not acquire any better title than he had in the first instance.

3. PARTNERSHIP—*Accounting—Interest—Trusts and Trustees.*—Where partners, who are made to account to another partner for profits made by them out of the partnership property, ob-

tain credit for expenditures made by them they should be allowed interest only on money actually paid by them from the time of payment, or upon any contract made by them for the payment of money bearing interest from the time such interest began to run.

Appeal from a decree of the Corporation Court for the city of Staunton. Decree for complainant. Defendants appeal.

*Modified and affirmed.*

The opinion states the case.

*A. C. Gordon* and *J. M .Perry,* for the appellants.

*John Critcher,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

In the spring of 1903 Glendy and wife conveyed to Jacob Yost, trustee, 3,249 acres of land in Bath county for $10,000. The deed did not declare the character of the trust, but it appears that William Patrick and John Critcher were interested in the purchase along with Yost, and a written agreement was made between the parties to the effect that Yost and Patrick should advance the purchase money and the title was to be held by Yost for the common benefit of himself and his associates in the proportion of three-eighths each to Yost and Patrick and two-eighths to Critcher; that the trustee, in conjunction with the other parties and with their advice and assistance, should sell the property, and, after returning the purchase money with interest and all reasonable expenses, divide the profit in the proportions mentioned. Critcher's contribution to the joint venture consisted in drawing the attention of his companions to the land and its possibilities—a service the ultimate outcome of which was the realization of a gross profit of $14,000.

In June, 1903, Critcher, who was very much in need of money, wrote to Yost to inquire if there would be any objection to his selling one-half of his interest to an outside party, remarking that he would not sell unless it was agreeable to his associates. Yost in reply conceded Critcher's right to sell, but suggested that he ought in the first instance to give himself and Patrick the privilege of buying if so disposed. This correspondence was followed by an offer from Critcher of one-half of his holding for $500, and a counter-proposition from Yost of $500 for his whole interest. Both propositions were declined, and soon after these occurrences the relations between Critcher and Yost became strained, and all direct communication between them ceased.

In September, 1904, the trustee entered into negotiations with Housel, of Bedford, Pennsylvania, for the sale of the timber on the land for $17,000; and on September 15, Housel telegraphed his agent to close the deal. The trustee accordingly executed a deed conveying the timber to Housel at the agreed price, reciting a cash payment of one-third of the purchase money. In fact only $200 were paid, and the deed with a draft attached for the residue was forwarded to Bedford to be delivered on payment of the draft. On September 28, Housel's attorney wrote Yost that when certain minor objections to the form of the deed, to which he called attention, were corrected, his client would pay the draft and complete the purchase. To that letter both Yost and Patrick replied agreeing to some of the suggested changes in the deed; but Yost insisted that the draft must either be paid and the bonds for the deferred payments signed, or else that all the papers be returned without delay. He moreover declared, that "at the very time this transaction was closed, other parties were ready to buy," observing that "unless you gentlemen propose to close this matter up without further delay, kindly return all the papers to me and consider the deal off. We cannot afford to give

longer time.   In fact we have already jeopardized our interests in the effort to accommodate you."   On October 8, the deed was reformed in compliance with Housel's insistence, but not until October 22 was there a definite refusal on his part to comply with the agreement.   So that until the latter date Yost and Patrick had every reason to believe the sale would be consummated.

In May, 1905,  the trustee sold the timber to Housel and Layman.   The price is not disclosed, but it appears that Yost subsequently paid a bonus of $3,700 to be released from the contract.   That happened in this way:  The Highland Development Company offered $24,000 for the entire property, land and timber; whereupon Yost bought back the timber from Housel and Layman at the above named advance on the selling price, and then sold land and timber to the Highland Development Company for $24,000. Meanwhile, on September 28, 1904, R. N. Page, through B. L. Partlow, opened negotiations with Critcher for the purchase of his interest, and the sale was made October 7, for $1,000.   Within a few months thereafter Page sold to Yost and Patrick.   The record is silent, both as to the date and consideration for this transfer, but it appears that though Yost and Patrick freely advised with each other touching every material step looking to a sale of the community property, Critcher was not informed of transactions vitally affecting his rights.   Thus, at the very time when they believed a sale of the timber alone had been made for $17,000  (and other advantageous offers of purchase had been received), they not only failed to communicate to Critcher knowledge of these important facts, but was suffered to part with his property for a grossly inadequate price, much less, indeed, than his share of the amount offered for the timber alone.

In these circumstances, upon a bill filed by Critcher for relief, the learned judge of the Corporation Court of the city

110

of Staunton, in a convincing opinion, held that he was entitled to share in the net profits realized from the sale to the Highland Development Company, and decreed accordingly. From that decree this appeal was allowed.

The bill called for answer under oath from the trustee with respect to documents and correspondence in his possession. It also demanded sworn answers from Partlow and Page, but waived answer under oath from Patrick. It is conceded that Partlow was acting for Page in negotiating the purchase of Critcher's interest, and though the parties all deny that Page represented Yost and Patrick, the facts remain that he made the purchase at Patrick's suggestion, and shortly thereafter transferred his purchase to them for "a valuable consideration." Yost, it is true, denied that he had any communication with Partlow in reference to the purchase prior to the institution of the suit. He likewise denied the agency of Page. Yet, though alertly on guard and weighing his words, he was careful not to deny knowledge of Page's purpose to purchase, or communication between them on the subject. As a matter of fact, in view of the close touch maintained between himself and Patrick throughout the transaction, it is not believable that Yost was kept in ignorance of a scheme obviously designed for the purpose of eliminating an unwelcome associate by acquiring his interest in the trust subject. If the transaction had been ingenuous, there would have been no occasion to conceal the actual consideration paid by Yost and Patrick to Page; and, instead of suppressing important facts, the parties, if necessary, would have taken the witness stand to make plain the fairness of their conduct in connection with a questionable transaction.

The defense of the appellants is founded on a misapprehension of the law regulating the conduct of persons occupying a fiduciary relation to each other with respect to their dealings with matters pertaining to the trust. In this case

the contract between the parties was in the nature of a partnership agreement, and imposed upon each in transactions *inter se* the high degree of duty arising out of that confidential relation.

As was said in *Tennant* v. *Dunlop,* 97 Va. 234, 33 S. E. 620 (speaking of the duty of the surviving partner seeking to purchase the interest of the deceased partner) : "He cannot simply remain passive, but must make a frank and honest disclosure of all within his possession or knowledge from which a sound judgment may be formed as to the value of the interest to be sold. He cannot hold the representative at arm's length, and seek to make a profit for himself."

So, also, in 30 Cyc. 457, it is said, that a purchase by one partner of his co-partner's interest may be avoided either for actual fraud, or for the violation of that high degree of good faith and fair dealing which the law requires of the partners in their transactions with each other, or for a non-performance of a condition imposed by the contract."

In *Sexton* v. *Sexton,* 9 Gratt. 204, the court held : "He (the selling partner) was bound not only to disclose truly any information in his possession that might be called for, but if he perceived that the purchasing partner was laboring under incorrect views in reference to the amount of the debt due by the concern, by which he might be misled into too high an offer for the interest to be sold, it was his duty to furnish all the data he might have by which such views might be corrected and the mischief prevented."

In the instant case, though we do not believe the parties were intentionally guilty of fraud, it is, nevertheless, plain that they did not exercise that "utmost good faith and fair dealing" which the law exacts in transactions between partners, or trustee and *cestui que trust.* Yost and Patrick knew that Critcher was laboring under great financial embarrassment, and if they did not actually purchase his interest through Page, they, at least, induced the latter to buy

and suffered Critcher to sell at a ruinous sacrifice, in igno-rance of important facts in their possession materially affecting the price.

As was said in *Miller* v. *Ferguson,* 107 Va. 249, 255, 57 S. E. 649, 651, 122 Am. St. Rep. 840: "after availing them-selves of Miller's plan and eliminating him as a possible competitor, they carried on negotiations behind his back and withheld from him information of the gravest impor-tance, vitally affecting his interest."

It is immaterial whether Page did or did not act for Yost and Patrick in purchasing Critcher's interest. They per-mitted the sale to be made in circumstances which affected their consciences and involved a breach of trust, and the property which was subsequently acquired by them was impressed with the original trust in Critcher's favor.

It is true as a general proposition that a purchaser with notice from a purchaser without notice takes a good title. Otherwise, it is reasoned, a *bona fide* purchaser without notice might be hindered in the disposition of the property, "though entitled to have the whole world for his market." But the rule is subject to the exception, that when a pur-chaser with notice sells to a purchaser without notice and afterwards repurchases the property, he does not acquire any better title than he possessed in the first instance. *Ara-gon Coffee Co.* v. *Rogers,* 105 Va. 51, 52 S. E. 843. See note to principal case and authorities cited, 8 Am. & Eng. Ann. Cas. 626.

"As between *cestui que trust* and trustee, and all parties claiming under the trustee otherwise than by purchase for valuable consideration without notice, all property belong-ing to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be sub-ject to or affected by the trust." 28 Am. & Eng. Ency. of Law (2nd ed.), 1108-g, and n. 10.

In considering the cross-errors assigned by the appellee, the commissioner should require proof of the alleged payment by Yost of $3,700 to Housel and Layman.  He must also allow interest only on moneys actually paid by Yost and Patrick from the time of payment, or upon any contract made by them for the payment of money bearing interest from the time such interest began to run.   In these particulars the decree of the Corporation Court will be modified, and as thus modified will be affirmed.

HARRISON, J., dissents.

UPON A REHEARING, NOVEMBER 16, 1911.

BY THE COURT:

This case is before us on a rehearing of a decree entered by this court at the November term, 1910, modifying and affirming a decree of the Corporation Court of the city of Staunton.

After careful consideration of the arguments on behalf of appellants and appellee, upon the rehearing, we are of opinion to adhere to the conclusion formerly reached, and the opinion then delivered, with some minor amendments, will be filed as the opinion of the court.

HARRISON, J., (dissenting) :   With my view of the facts of this case, I cannot concur in the conclusion reached by the majority of the court.

*Modified and affirmed.*