ANGELINE P. McD'ANIEL et al., Appellants, v. HENRY G. SPRICK et al.

Division One, March 5, 1923.

1. **BILL OF EXCEPTIONS: Timely Objection: Nunc Pro Tunc Filing.** Where the abstract, filed and served in due time, contains sufficient recitals of the timely filing of a bill of exceptions, an objection thereto, made only in respondents' brief, served and filed eleven days before the case is set for hearing that the *nunc pro tunc* order requiring the clerk of the trial court to show by his records the filing of the bill as of a previous term was not based upon sufficient memoranda, comes too late.

2. **DEED OF TRUST: Foreclosure: Sufficient Publication of Notice of Sale.** In the absence of the deed of trust and other evidence showing how long notice of sale was required to be published, publication of a notice of sale on March 25th, beginning on February 22nd and continued consecutively each week in a weekly newspaper to and including March 22nd, is sufficient under the statute.

3. ————: ————: ————: **Publisher's Affidavit: Other Evidence.** Where the foreclosure sale of a deed of trust occurred on March 25th, and the publisher's affidavit showed publication of notice of sale in his weekly newspaper only on February 22nd and March 1st, 8th and 15th, it may be shown by other evidence, for instance, by the paper itself, that it was also published on March 22nd. The statute (Sec. 10404, R. S. 1919) making the publisher's affidavit sufficient evidence of publication, does not exclude other evidence or any other proper proof of the fact of publication.

4. **EVIDENCE: Impeachment of Own Witness.** Where a witness for plaintiff had testified that an intending bidder at a foreclosure sale of a deed of trust had agreed to give and had given him $25 not to bid, an offer by plaintiff to prove by a justice of the peace that at a former trial the witness had testified that the successful bidder was present when the agreement was made and heard the conversation is properly excluded.

5. **FORECLOSURE SALE: Suppressing Bidding: Innocent Purchaser.** A party who agrees to pay and does pay $25 to an intending bona-fide bidder for refraining to bid at a foreclosure sale under a deed of trust is not an innocent purchaser; and if he afterwards buys from the successful bidder, who, without notice of his misconduct, causes the trustee to convey the property to him directly, at a profit to himself, he cannot defend his title as one derived from a bona-fide purchaser.

6. ———: ———: ———: **Pleading: Availing One's Self of Another's Defense.** The issue of innocent purchaser cannot be raised by general denial, but must be affirmatively pleaded, and the burden is on the pleader. Where the defendant pleaded that he was an innocent purchaser, and the evidence establishes his misconduct in suppressing bidding, he cannot, without an affirmative plea, avail himself of the innocent conduct of the actual purchaser, who without notice of his misconduct, sold the property to defendant and caused the trustee to convey it directly to him. To avail himself of the innocent and bona-fide conduct of the actual purchaser as a shield between himself and the results of his own misconduct, he must plead it specifically.

7. ———: ———: ———: **Re-Conveyance to Wrongdoer.** He who is guilty of fraud on the mortgagor, by suppressing bidding at the foreclosure sale of a deed of trust, where the property is sold to an innocent purchaser without knowledge of his misconduct, cannot, after a re-conveyance to him by the actual purchaser, be heard to assert that he is an innocent purchaser. But upon a re-conveyance to the wrongdoer his fraud revives, and in a suit against him to set aside the trustee's sale is available to the mortgagor.

8. ———: ———: ———: **Redemption: Tender.** Where the foreclosure of the deed of trust should be set aside because of the fraudulent misconduct of defendant in suppressing bidding, a request that the widow and minor heirs of the mortgagor be allowed a reasonable time in which to pay the purchase money to defendant should be granted; and in this case three months, after an ascertainment of the amount due, is considered a reasonable time.

9. ———: ———: ———: **Accounting.** Where the foreclosure sale of a deed of trust is set aside on account of defendant's fraudulent conduct, an accounting should be taken, and the mortgagor be required to pay to defendant the amount he paid to the trustee, with interest, and taxes paid, within a reasonable time, and the defendant be charged with the fair rental value of the land since he took possession.

Appeal from Marion Circuit Court.—*Hon. Charles T. Hays*, Judge.

REVERSED AND REMANDED (*with directions*).

*Harry S. Rouse* and *Stewart & Stewart* for appellants.

(1)   The respondent, became the purchaser and under the evidence he knew he was to receive the deed from the trustee when the land was knocked off to Simpson, and he gave Mesmer $25 not to bid in order that he could purchase the land for less than its reasonable market value. Keiser v. Gammon, 95 Mo. 224; Massey v. Young, 73 Mo. 273; Cooley on Torts, 476; Shuck v. Co., 244 Mo. 370. It is now the uniform doctrine that any combination at public or private sale, having the effect of preventing competition in bidding is against the policy of the law and void. In the present case, Mesmer desired ·to purchase the land and he was silenced by Rogers (the purchaser) by the payment of $25, and it was agreed and understood by and between Rogers and Simpson that the deed was to be made to Rogers, which was done. Durfee v. Moran, 57 Mo. 379; Neal v. Stone, 20 Mo. 95; Wooton v. Hinkle, 20 Mo. 290. (2)   The court erred in excluding the evidence of witness, justice of the peace. Prior to the trial Mesmer testified in an unlawful detainer case of Byers v. McDaniel, tried before the witness, and at that time Mesmer, testified that Simpson and Rogers approached him and asked what he would take for his day's work and he replied $50. Afterwards Rogers agreed to pay him $25. Rogers paid him $25. Simpson was present at the time. Appellants were misled, surprised and entrapped by the testimony of witness, Mesmer. Clancy v. St. Louis Transit Co., 192 Mo. 642; Dueleber v. United Ry. Co., 195 Mo. App., 658; State v. Burk, 132 Mo. 373; Greenleaf on Evidence (16 Ed.) sec. 444, p. 565. (3)   Respondents attempt to plead an es-·toppel in their answer. They charge that Charles McDaniel accepted a few dollars of surplus and thereby ratified the sale. Our motion to strike out that part should have been sustained. Before anyone can be charged with ratification the party charging must not only charge but prove that the party charged knew the facts when the act was committed. The answer charges

that we received the surplus but not with full knowledge, that bidders had been bought. The evidence shows Charles McDaniel was at that time sick. He had no opportunity to know the facts concerning the sale. No conduct or silence on the part of McDaniel could work an estoppel without he knew all the facts. Acton v. Dooley, 74 Mo. 63; Galbreath v. Newton, 30 Mo. App. 380; Moore v. Ryan, 31 Mo. App. 474; 28 Am. & Eng. Enc. Law (2 Ed.) 843.

*James C. Dorian* for respondents.

(1)   The burden of showing fraud is upon the party attacking the deed, and to justify a cancellation of the deed the evidence adduced to establish the fraud must be clear and convincing. Keiser v. Gammon, 95 Mo. 224; Forrester v. Scoville, 51 Mo. 268; Johnson v. Quarles, 46 Mo. 423; Jackson v. Wood, 88 Mo. 77. The evidence of all the witnesses is that the actual purchaser at the sale was McKim; that he purchased through his agent, Simpson; that the respondent, Rogers, was not interested in the purchase until the next day when he actually purchased the land from McKim. Admitting (which we do not) that fraud existed between Mesmer and Rogers, that would not affect the title in the hands of McKim, who purchased the land in the open market, at public outcry without knowledge of any understanding between Mesmer and Rogers, and if the title was complete in McKim, that is, if he had a right to the deed, then he had a right to sell the lands to anyone he pleased, including Rogers, and the purchaser from McKim would receive a good title. Keiser v. Gammon, supra. (2)   The appellants complain that "the court erred in excluding the evidence of the justice of the peace." The witness, Mesmer, was the witness of the appellants, they brought him into court, placed him on the witness stand and by their act vouched for his truthfulness, then they ask the privilege of contradicting their own witness. They say they were surprised by the testimony of Mesmer, but nowhere do they make that statement to the trial judge, but give that as their reason to this court now for the first time.

Creighton v. Modern Woodmen, 90 Mo. App. 378. The doctrine of waiver and estoppel applies to this case. The evidence clearly shows that Charles McDaniel received the residue from sale in the hands of the trustee and thereby ratified sale and waived any right of redemption. Lanier v. McIntoch, 117 Mo. 508; Bank v. Richmond, 217 S. W. 74.

LINDSAY, C.—The plaintiffs, who are the widow and heirs at law of Charles S. McDaniel, deceased, prosecute this suit in equity to set aside a sale of eighty acres of land in Lewis County made by the defendant Charles B. Linville, as trustee under a deed of trust executed on the 11th day of December, 1913, by said Charles S. McDaniel, and his wife Angeline, now widow and administratrix of his estate, and to cancel the deed made by said trustee to the defendant, Jesse Rogers. The defendant, Henry C. Sprick, is the beneficiary named in said deed of trust. Lands in Knox County included in the same deed of trust had been sold previously, and are not in issue in any way in this suit.

The suit was instituted in the Circuit Court of Lewis County. The venue was changed to Marion County, and the trial resulted in a judgment for the defendants, and the plaintiffs have taken an appeal therefrom to this court. The sale complained of was made on the 25th day of March, 1918, and the deed sought to be canceled was made and delivered on the following day. In June, 1919, Charles S. McDaniel brought this suit. After his death which occurred in December, 1919, the cause was revived in the names of the present plaintiffs, who filed their petition on the 21st day of April, 1920. Upon the trial the circuit court found against the defendants on the affirmative defenses pleaded by them, but found that plaintiff had failed to sustain the allegations of their petition, and that under the evidence they were not entitled to any relief. The essential statement in the pleadings, necessary to be considered, may be thus summarized:

The plaintiffs alleged that the sale was illegal, irregular, unfair and void for the reason that said land was not sold within one week from the last insertion and publication of the notice of sale, and that by reason thereof, the land sold for an inadequate price, and for much less than its real value. They further alleged that the defendant, Jesse Rogers, who became the purchaser of the land sold by the trustee, had secretly and fraudently combined with others to suppress bidding, and did prevail upon and cause others to refrain from bidding in order that he, Rogers, might buy said land at less than its real value, and that said Rogers, by reason thereof, did buy the land at an inadequate price, much less than its real value, and much less than it would have brought under a fair and open sale. The plaintiffs further alleged in their petition that Charles S. McDaniel, as soon as he learned of the alleged facts foregoing concerning the sale, notified defendant Rogers that he intended to file suit to set aside the sale; that he thereupon made preparation to file suit, and did file the same as speedily as it was possible to collect evidence and investigate the law. The petition contained an offer to return to Rogers the sum of $2,175, which was the amount paid by Rogers to the trustee, and contained a request that the plaintiffs be granted a reasonable time within which to repay the purchase money.

The defendants, Linville and Sprick, filed a joint and several answer, in which they admitted the making of the deed of trust, the sale of the land thereunder, and the relation of the plaintiffs to Charles S. McDaniel, and denied generally the other allegations in the petition. They further alleged that the sale was duly and legally advertised, and that at said sale the lands were purchased by Dr. Walter B. Simpson, who acted in that behalf as agent for Dr. J. V. McKim, and that afterwards, on March 26, 1918, the defendant Rogers purchased said lands from McKim, and that the trustee, at the request of McKim and Simpson, made his deed directly to defendant Rogers. They further alleged that after said

sale, and on the 26th day of March, 1918, Charles S. Mc-Daniel, delivered to the trustee certain written orders against the surplus fund in the hands of the trustee arising out of the sale; one being an order in favor of E. C. Thompson for the sum of $351, and the other an order in favor of the La Belle Savings Bank for the sum of $107.50, which sums the trustee paid as directed; that after doing so there remained in his hands the sum of $181.. 84, surplus money arising from said sale, which, on the 27th day of March, 1918, he paid to said Charles S. McDaniel, who accepted and retained the same. These defendants alleged that thereby Charles S. McDaniel had ratified the acts of the trustee, and had waived all irregularities, if any, in the advertisement and sale of the land, and that these plaintiffs are bound by the acts of Charles S. McDaniel in that behalf. They further alleged that neither Charles S. McDaniel nor the plaintiffs had ever tendered the re-payment of the purchase money or any part thereof.

The defendant Rogers filed an answer in which he set forth all the foregoing matters pleaded by his co-defendants. In addition thereto, he alleged that after the receipt by him of the deed from the trustee, Charles S. McDaniel surrendered to him full possession of the lands, and made no claim of any right to redeem the same, or that the sale thereof was irregular, fraudulent or void. He stated that he had been in possession of the land since March, 1918, and that said land at the time of the sale was not worth more than the sum of $2,687.50. This was the amount paid by him to McKim for the land. He alleged that he had made valuable and lasting improvements on the land, setting forth the amount, and character and cost of these in detail; and that he had paid all taxes against the land including taxes in arrears at the time of the sale. He alleged that on account of improvements placed by him on the land, and also by the general advance in prices of farm lands in that vicinity, the land had advanced in value since the date of sale, and that on account of the laches and delay of Charles S.

McDaniel and of plaintiffs, in attempting to redeem said land, it would now be inequitable and unjust to permit them to do so. He denied entering into any secret agreement, or fraudulent conspiracy, to suppress bidding.

The plaintiffs filed their motion to strike out of the answers all allegations concerning the orders given Charles S. McDaniel against the surplus fund in the hands of the trustee, and the acceptance of the residue of $181.84, by him. Replying to the separate answer of the defendant Rogers, plaintiffs denied the new matter therein, and alleged that he had been in full possession of the land, and had received all the rents and profits therefrom for the crops of the years, 1918, 1919, 1920; asserted that the reasonable cash rental value of the land was $6 per acre, per annum, and that defendant Rogers was indebted to them in the sum of $1,480 for the use and occupation of the land, and asked judgment for that sum against him, and for the relief prayed for in their petition as well.

As before stated the circuit court found against the defendants on the affirmative defenses pleaded in the answer. These were, ratification of the sale by Charles S. McDaniel, and laches in repudiating the validity of the sale, and in bringing suit to set it aside and to redeem. It was admitted at the trial that Charles S. McDaniel gave the orders, and received the residue of money making up the amount of surplus in the hands of the trustee. But, manifestly, and as the finding of the court necessarily implies, McDaniel was not at the time aware of the conduct of Rogers on the day of the sale, which became the basis of the complaint subsequently made, and did not unreasonably delay the bringing of this suit. With these elements of defense thus eliminated, the case stands here for determination upon the allegations of the petition, the general denial thereof by the defendants, and the evidence found in the record. The essential grounds of relief stated are:

First, that the sale was not had within one week from the last insertion and publication of the notice

thereof.; second, that defendant Jesse Rogers sought and prevailed upon others to refrain from bidding for the land, and also that by reason of the foregoing, the land was caused to be sold at an inadequate price, and did in fact sell for a price much less than its real value.  Objection is made by defendants that the abstract does not sufficiently show the filing of the bill of exceptions.  This and the contention of plaintiffs are to be reviewed in the light of the evidence which will be stated and considered in connection with the subject to which it relates.

I.    The defendants urge in their brief that no bill of exceptions was ever filed in this cause, and that the *nunc pro tunc* order of the judge of Marion County Circuit Court made on the twenty-fifth day of November, 1922, requiring the clerk of that court to file the bill of exceptions as of the seventh day of April, 1922, is a nullity, because not based on sufficient memoranda to authorize the court to make said order, and that there is nothing therefore before this court for review, and that there is no record that the bill of exceptions was ever filed.  The evidence upon which the court made the *nunc pro tunc* order is not before us.    The abstract contains sufficient recital of the timely filing of the bill of exceptions under Rule 31. Were this otherwise the objections come too late, under Rule 11.

**Bill of Exceptions.**

The cause was set for hearing in this court on the second day of January, 1923.  Appellants' abstract and brief were served upon respondents on the first day of December, 1922, and respondents' brief containing the objections was served upon counsel for appellants on the twenty-second day of December, 1922.  No other objections were served or filed.

Rule 11 requires, under the circumstances here shown, that such an objection be served upon appellants' counsel at least fifteen days before the cause is docketed for hearing.    Hence, under the rule the objection must be deemed to be waived, and cannot be considered by the court.

II.  A certified copy of the deed of trust was put in evidence, but it is not set forth in the record here. Hence it is not directly shown how long the notice of sale was required to be published under the terms of the deed.  But, the deed made by the trustee contains a recital that the notice was published for at Publication of Notice. least twenty days before the day of sale.  The affidavit of the publisher, attached to the deed and shown in the record recites a publication of the notice for four weeks consecutively, on the following dates: February 22nd, March 1st, March 8th, March 15th, 1918.  Upon the trial, copies of the issue of the La Belle Star, the weekly newspaper in which the notice was published, were offered by the defendant in evidence as containing the notice in the issues of the above dates mentioned, and also in the issues of March 22nd, 1918.  It was conceded that the advertisement contained in the issues introduced was the same as that mentioned in the affidavit of the publisher.

Counsel for appellants concede in their brief that there ''was some evidence that the sale was advertised for four weeks.''  Their contention seems to be that the publisher's affidavit is the sole evidence; that evidence of publication for an additional week is incompetent, and the publication for the additional week ineffective.  Publication in the issue of the 22nd of March was required for a sale to take place on the 25th of March. [Sec. 2236, R. S. 1919; Sec. 2843, R. S. 1909.]  The evidence on this point was not contradictory of the affidavit of the publisher, but was supplemental thereto, and this evidence showed a publication of notice for four weeks successively and that the last insertion was not more than one week prior to the day of sale.  This evidence was properly admitted.  The statute, Secton 10404, Revised Statutes 1919 (Sec. 590, R. S. 1909), making the publisher's affidavit sufficient evidence of the publication, does not exclude other evidence of publication.  ''This affidavit is sufficient, but not the only evidence.  The statute does not exclude any other mode of proof of the facts of

297 Mo.—28

which the printer's affidavit is declared sufficient evidence." [Raley v. Guinn, 76 Mo. 263, 271.]

The circuit court had before it the full text of the deed of trust; also copies of the issues of the newspaper containing the advertisement, showing weekly insertions, beginning February 22, 1918, and ending March 22, 1918, and its ruling on this point was correct.

III.  At the time of the sale, defendant Rogers owned land adjoining the land involved in this suit.  He went to Monticello on the day of sale, intending to bid on the land.  He there met one Foster Mesmer, who had lived for many years in the neighborhood where this land is located, and twenty miles or more from Monticello.  Mesmer went, intending to bid for the land, and had previously spoken to a banker about borrowing the money in the event he should get the land.  His testimony was that he had made up his mind to give about $2,000 for the land, or "might have given a little more."  Doctor Simpson, who lived at Edina, also attended the sale.  Prior to moving to Edina he had lived at Newark in the vicinity of the land.  His purpose, he stated, was to protect the interests of his brother who held a second mortgage on the land to be sold.  McKim was cashier of the bank at Newark, and did not attend the sale.  Mesmer and defendant Rogers met at Monticello before the sale, and an arrangement was reached between them, whereby Mesmer agreed not to bid for the land and Rogers undertook to pay him $25 and did pay him that amount by a check given the same day.  In answer to a question in his direct examination, Mesmer:

*Suppressing Bidding.*

"Well, sir, I went over where Mr. Rogers was sitting on some steps.  I says, 'You over here?'  He says, 'Yes, sir.'  I says, 'If I knew you was coming I would not have come,' something that way, and he said 'he come to buy the land,' I says, 'Go ahead and buy it, I won't bother you.'  He thanked me; 'I will appreciate it,' he says, 'and pay you well for your trip down here,' and we decided on $25."

On cross-examination, plaintiffs' attorneys asked the witness, Mesmer, if he had not previously testified in a certain trial before a justice that Simpson was present during the foregoing conversation. This was objected to by defendants as an attempt by plaintiffs to impeach their own witness. The court admitted the evidence subject to the objection, and allowed the witness to answer the question, and other like questions as to what he had testified to in the other trial, and as to what he had said on the same subject to other persons on other occasions. The witness denied that he had testified, or stated to anyone, that Simpson was present during the conversation between himself and Rogers. Afterwards, plaintiffs offered to prove by the justice that Mesmer had testified on the trial before him that Simpson was present at the conversation when Rogers agreed to pay, and did pay Mesmer $25. Upon objection by defendant, the court excluded the evidence thus offered, as being improper upon the showing made. The record does not show that plaintiffs made any claim that they were surprised by the testimony given by Mesmer upon his direct examination. This evidence was properly excluded.

Mesmer testified that he had mentioned in conversation at various times the fact that he had received $25 from Rogers. He stated that at the time he deposited the check from Rogers, he told Bradshaw, the banker, the circumstances under which he received it. Simpson was called by the defendants, and testified that he had no conversation with either Rogers or Mesmer about bidding on the land. He stated that he arrived just before the sale; went down with the trustee, who knew of his purpose to protect the interest of his brother, who held a second mortgage. He characterized as "absolutely false" the suggestion that he was with Rogers and participated in the offer of $25 to Mesmer. It may be said here that plaintiffs in their cross-examination of Simpson did not question him upon the fact, or circumstances of any conversation or understanding between him and Mesmer, or Rogers, as to bidding on the land.

Simpson testified that on the day preceding the day of sale, it was understood between himself and McKim, that he, Simpson, would attend the sale in the interest of his brother, and would also bid for McKim. McKim was not called to testify. Defendant Rogers testified, and related the conversation between himself and Mesmer, whereby the latter was induced to refrain from bidding. His statement does not differ materially from that of Mesmer. He says he did agree to give Mesmer $25 to refrain from bidding, or "for his day's work," and that after the sale he gave Mesmer a check for $25.

The record is not quite clear as to the whole number of bidders. Besides Rogers and Simpson, a man named Fisher bid on the land. There is a suggestion that Hon. Walter Hilbert bid, but this is not clear from the record. It appears from Mesmer's testimony that the Fisher who bid on the land was one John Fisher, who lived at Edina; and Mesmer testified that on the day of sale he told Fisher about the offer made by defendant Rogers to pay him, Mesmer, "for his day's work." Mesmer stated it as follows:

"Q. Just tell the court how $50 happened to be mentioned between you and him there that day? A. Well, Jesse told me. In the meantime I told John Fisher what I told Jesse, he would pay me for my day's work down there, I would not bother him, he could own the land higher than I could. Mr. Fisher says, 'Make him pay for the day's work all right.' He come up, Jesse wanted to know what I would take; I says, 'Oh, about $50.' He says, 'That is too high.' He says, 'I think $10 would pay for day's work.' I says, 'I ought to have more than that.' I says, 'How would $25 strike you?' He said something about 'that be all right.' "

"Q. Which John Fisher was that, the one who lives in Edina? A. Yes."

Rogers, in his testimony only mentioned three persons as bidding, himself, Simpson and Fisher.

According to the testimony of Rogers, the first bid must have been made by Fisher. As Rogers states:

"This fellow from Edina, Fisher, I believe, started the land."

On cross-examination he denied knowing whether the Fisher who bid on the land was the same Fisher mentioned by Mesmer, but he said he knew of no other Fisher being there that day. Rogers testified, in answer to questions by the court, that he had no information before the sale that McKim directly, or through anyone else, was going to bid, but, that he did know on that day, and before the sale, that Simpson was going to bid on the land. He testified on cross-examination that he did not expect to pay Mesmer the $25, unless he bought the land, but, also, that on that day, and after the sale by the trustee, he did pay to Mesmer the $25.

Charles S. McDaniel was not present at the sale, and seems to have had no one there representing him. It was shown that he was in a poor state of health during the period both preceding and after the sale, and was for much of the time unable to leave his home. Simpson and Linville testified that when Simpson's bid was successful, it was stated that he had bought for Dr. McKim.

On the day following the sale Rogers, and Simpson also, went to Newark, where McKim was the cashier of a bank. It was then and there arranged that Rogers could have the land, by paying the amount of the bid, and the further sum of $500 to McKim. One Arthur Buerk, to whom Rogers, before the day of sale, had talked concerning a loan in case he bought the land, came in response to the request of Rogers made that morning, and furnished the money to Rogers to close with McKim. All of them, except McKim, were examined as to the circumstances of this meeting. Rogers testified that it was with Simpson that the amount he was to pay above the bid was agreed upon. The result was that Buerk made his check for the trustee for the amount of the bid, and delivered it to Simpson, and made another check to McKim for $500. It was understood between them that the trustee, who was not present, should make his deed to Rogers, and the deed was so executed by the trustee,

at Edina, on the same day, and on the following day was filed for record.

Manifestly, defendant Rogers cannot claim to be an innocent purchaser. His claim as grantee under the trustee's deed must be founded upon the ground that McKim, through his agent Simpson, was a purchaser bona-fide, and without notice of the suppression of bids, and took a clear right to have the trustee execute a deed to him, and that thereby McKim might transfer to defendant the right to have the trustee make his deed direct to defendant, and thereby also the defendant might, despite his own misconduct, defend his title as one derived from a bona-fide purchaser.

Innocent Purchaser.

In the situation presented, wherein it is alleged that defendant Rogers suppressed bidding, and was the purchaser, and the defendant answers that Simpson bought the land for McKim who transferred his right to defendant, it was incumbent upon the defendant to plead that McKim purchased in good faith, and without notice of defendant's misconduct. He would then have assumed by his pleading the attitude of one raising a bona-fide purchaser as a shield between himself and the results of his own misconduct, or notice of fraud. In his testimony he admits misconduct, but he did not plead that McKim through his agent, Simpson, was an innocent purchaser. He contents himself in his answer upon this phase of the case with the allegation that the sale "was duly and legally advertised," and "that at said trustee's sale said lands were purchased by one Dr. Walter B. Simpson, who acted in that behalf as agent for Dr. J. V. McKim."

The issue of "innocent purchaser" cannot be raised by general denial, but must be affirmatively pleaded, and the *onus* lies on the pleader. [Holdsworth v. Shannon, 113 Mo. 508; Young v. Schofield, 132 Mo. l. c. 663; Stephenson v. Kilpatrick, 166 Mo. l. c. 268.] This burden lay upon defendant Rogers because he was charged with suppressing bids, and because, admittedly, he actively engaged in producing the very condition which existed

when Simpson's bid for McKim was accepted by the trustee. As before stated, the court found against the defendants on the affirmative defenses. But the defense here under consideration, and which we hold was necessary to be pleaded under the facts of this case, was not pleaded in the answers of any of the defendants. The defendant Rogers did not assume this burden in his pleadings, nor can we say upon this record that the evidence affirmatively sustains that burden.

IV. But, be that as it may, the rule that a purchaser without notice of the fraud may sell the property to a person who has notice and pass a good title to that person, cannot be applied for the benefit of defendant Rogers under the facts in this record. This rule is founded upon recognition of the fact that if it were not so, the bonafide purchaser would not enjoy the benefit of his own unexceptionable title. [Craig v. Zimmerman, 87 Mo. 475, 478; Funkhouser v. Lay, 78 Mo. 458.] But there is an exception to the application of this rule, as well founded upon principle and established by authority as the rule itself. That exception, for the purposes here under consideration, may be stated thus:

If a bona-fide purchaser for value from the person who perpetrated the fraud, or committed the breach of trust, re-transfer the property, or that title comes again, to the person who perpetrated the original fraud or committed the breach of trust, then such person takes back his title impressed with the trust, or vitiated by the fraud. This rule, and the second rule, the complement of the first, are stated in 2 Pomeroy's Equity Jurisprudence (2 Ed.) sec. 754:

"If the title to land, having passed through successive grantees, and subject in the hands of each to prior outstanding equities, comes to a purchaser for value and without notice, it is at once freed from these equities; he obtains a valid title, and with a single exception, the full power of disposition. This exception is, that such a title cannot be conveyed, free from the prior equities, back to a former owner who was charged with notice. If A,

holding a title affected with notice, conveys to B, a bona-fide purchaser, and afterwards takes a re-conveyance to himself, all the equities revive and attach to the land in his hands, since the doctrine requires not only valuable consideration and absence of notice, but also good faith. The second rule is, that if a second purchaser with notice acquires title from a first purchaser who was without notice, and bona-fide, he succeeds to all the rights of his immediate grantor. In fact, when land once comes, freed from equities, into the hands of a bona-fide purchaser, he obtains a complete *jus disponendi,* with the exception last above mentioned, and may transfer a perfect title even to volunteers."

The exception mentioned is stated in a similar way by Bispham in his Principles of Equity (10 Ed.) sec. 265, and by Story and others. It has been recognized and applied by the courts in many cases, and is undeniable under the appropriate circumstances. In an early case, Kennedy v. Daly, 1 Schoales & Lefroy (Irish Chancery), 379, the exception was thus stated:

"So, if Mr. Daly has made a conveyance to another person with notice of the trust, and taken back a re-conveyance, this would have operated nothing; it would not have altered the estate; nay, if a trustee conveys to a person who has no notice of the trust and then takes a re-conveyance, he having notice of the trust, it attached on him, though it would not on a person not having a notice; if a third person had become a purchaser, he would have been held discharged of the trust."

An instructive decision is that in Bourquin v. Bourquin, 120 Ga. 115. In that case the defendant as trustee of land had failed to pay taxes, and permitted the land to be sold, and the lands were purchased by Kaufman at the sale for taxes. Immediately after the redemption year, Kaufman conveyed to the trustee. In the suit by the *cestui que trust,* it was claimed that Kaufman was an innocent purchaser, and no fraud was alleged against him; but the court held that, in any event, the defendant took back the lands impressed with the trust. The court said, at page 118:

"Nor would the result be changed by the fact that in addition to the bid and ten per cent he paid Kaufman $30, the amount of other tax liens against the estate. In both cases he holds the redeemed property in trust for his son Polignac, but with the right to reimbursement for all sums expended in the protection of the property. If there was no collusion in the bidding or redemption, and if Kaufman was an innocent purchaser, this makes no difference. The principle that one without notice can convey to one with notice is subject to an exception where the transfer is back to him who was guilty of the actual or constructive fraud in first transferring, or in permitting the property to be transferred to an innocent purchaser. When the title revests in the wrong-doer, the original equity will reattach to it in his hands. It has been so held in reference to the transfer of negotiable papers, and the same exception applies in regard to real property. [Kennedy v. Daly, Sch. & Lef. 379; Clark v. McNeal, 114 N. Y. 287. See Andrews v. Robertson, 54 L. R. A. 673, and note.] Were this not the rule, nothing would be easier than for a trustee to take advantage of his own wrong. It would not only be necessary for him to make or permit a wrongful sale, in his individual capacity buy from the innocent purchaser, and then rely on the conveyance back as a shield with which to protect himself when sued for the very property which in the first instance through a breach of duty he allowed to be sold."

In Clark v. McNeal, 114 N. Y. 287, the issue was between contesting mortgagees. The court recognized the exception here under consideration as applying to one to whom the equity must attach although purchasing from a bona-fide holder. After stating the general rule extending protection to the one who with notice purchases from a bona-fide holder, the court said, at page 295:

"To this general rule, however, there is an exception. The principle of protection does not extend to the one guilty of the constructive fraud, even if he purchases from a bona-fide purchaser."

Application of the exception to the rule was made in Phillis v. Gross, 32 S. D. 438, wherein the court said, at page 449:

"It is not contended by respondents that the use and occupation of the land by Edgerton was not sufficient to charge Chamblin's grantees, who acquired their interests prior to the 11th day of September, 1905, with knowledge of his (Edgerton's) rights. It was on this date that the defendant Gross first became connected with the title. If Edgerton's possession at that time was such as to charge Gross with knowledge of his rights on that date, it is immaterial whether his grantees, with the exception of Bost, were bona-fide purchasers or not. If Gross conveyed the title to a bona-fide purchaser without notice, then such purchaser took the property freed from the rights of Edgerton. But, when such purchaser reconveyed to Gross, Gross again took the title subject to the rights of Edgerton."

The exception is stated and applied in Williams v. Williams, 118 Mich. 480, where a trustee had conveyed trust property to a bona-fide purchaser, and had taken a re-conveyance; in Hoye v. Kalashian, 22 R. I. 101, where it is applied to the holder of negotiable paper, wherein the court concluded by saying: "This exception rests upon the principle that one cannot take advantage of his own wrong."

In Tod v. Wick & Co., 36 Ohio St., to transfer of negotiable paper, where the court said, at page 387: "The same principle applies where estates held in trust are conveyed by the trustee to a bona-fide purchaser, and re-purchased by him from the same or subsequent purchaser. In such case the trust re-attaches."

In Yost v. Critcher, 112 Va. 870, Yost and Critcher and one Patrick had purchased together a large body of land, largely through the instrumentality of Critcher. Stating the after-events the court said, at page 875: "Yost and Patrick knew that Critcher was laboring under great financial embarrassment, and if they did not actually purchase his interest through Page, they, at

least, induced the latter to buy and suffered Critcher to sell at a ruinous sacrifice, in ignorance of important facts in their possession materially affecting the price." The court continued: "It is immaterial whether Page did or did not act for Yost and Patrick in purchasing Critcher's interest. They permitted the sale to be made in circumstances which affected their consciences and involved a breach of trust, and the property which was subsequently acquired by them was impressed with the original trust in Critcher's favor."

In Church v. Ruland, 64 Pa. St. at page 444, it is said: "Undoubtedly if a person, though with notice, purchases from one without notice, he is entitled to stand in his shoes, and take shelter under his bona-fides. If it were not so the bona-fide purchaser without notice might be unable to dispose of the property, and thus its value in his hands be materially deteriorated. But if the second purchaser in such case be the original trustee, who re-acquires the estate, he will be fixed with the trust. [Hill on Trustees, 165.] If an express authority for so plain a position be needed it will be found in Kennedy v. Daly, 1 Schoales & Lefroy, 379."

See also 27 Ruling Case Law, "Vendor and Purchaser," sec. 449, page 685, and cases cited; and note to Andrews v. Robertson, 54 L. R. A. 673, showing application of rule and exception to holder of commercial paper; and Dispatch Printing Co. v. Natl. Bank of Commerce, 50 L. R. A. (N. S.) 74, and annotation of later cases on same subject.

What is held here is not in conflict with what was said by this court in Bradford v. Davis, 219 S. W. 617. There was no issue and no evidence in that case calling for an application of the exception or a modification of the general statement there made. At page 618, it is said: "Once the title is clear of equities (silent unknown equities) by the intervention of an innocent purchaser, it remains clear." And the same may be said of what is there quoted from the opinion in Hendricks v. Callaway, 211 Mo. l. c. 559, 560. The facts in the latter case,

in so far as they resemble the facts presented here, receive a like interpretation, but they did not demand a consideration of the particular question which must be answered in the case at bar.

This court, in First Natl. Bank v. Wilson, 222 S. W. 381, applied the exception and the principle upon which it is founded, to the defendant in that case, who sought to defend his title to land by setting up his purchase from others who were bona-fide purchasers. The suit was against E. S. Wilson and R. C. Wilson. The essential facts are briefly stated. E. S. Wilson being insolvent, for the purpose of defrauding his creditors conveyed an interest in the land in controversy to R. C. Wilson. Shortly before this conveyance a judgment had been rendered in this court in a suit wherein E. S. Wilson was surety on a cost bond, and which rendered him liable on said bond for costs. Thereafter the clerks of Barry and Greene counties caused execution to issue to collect their costs, and the land in controversy was sold under execution against E. S. Wilson, and at the sale was bought by said clerks, Baker and Nicholson. The latter brought suit to set aside the deed from E. S. Wilson to R. C. Wilson, and pending and settling that suit, R. C. Wilson received a conveyance from Baker and Nicholson to the land for a consideration not in excess of $600. R. C. Wilson, in the suit brought by the First National Bank, which was a judgment creditor of E. S. Wilson, defended upon the ground that he was grantee of Baker and Nicholson. The plaintiff bank alleged that the money paid by R. C. Wilson to Baker and Nicholson was the money of E. C. Wilson. The trial court, and it was a suit at law, found that there was no evidence to convince the court that the money so paid was the money of E. S. Wilson; that is, the plaintiff failed to prove its allegation that it was E. S. Wilson's money. Hence, it was and is allowable to presume that R. C. Wilson paid his own money to Baker and Nicholson for the deed from them to him, and under which he claimed title. Concerning this finding of the trial court, this court said, at page

383: "This is not a finding that it was not his money, but simply a statement to the effect that the evidence does not satisfy the court that it was his money. But in the view we take of the case it matters not whether the small sum so paid was the money of Edward S. or R. C. Wilson."

This court held that the conspiracy between E. S. Wilson and R. C. Wilson to defraud the former's creditors "having been established, as it was, would be presumed to continue and not to be abandoned until its purpose was accomplished." The court next refers to the fact that R. C. Wilson's fraudulent title derived from E. S. Wilson, enabled him to purchase the title taken by Baker and Nicholson for a consideration wholly disproportionate to its real value, and continued and concluded by saying, at page 384:

"So that, even if R. C. Wilson paid the small consideration which was paid Baker and Nicholson for their deed with his own funds, he would reap a rich harvest from his original, fraudulent transaction. Neither law nor equity will permit a fraudulent grantee to thus take advantage of his own wrong. The title he acquired from Baker and Nicholson was tainted with the vice of the original wrong and conspiracy to defraud the plaintiff and other creditors of Edward S. Wilson, and was void as to them, and the property was in law still the property of Edward S. Wilson, and subject to the demands of his creditors. Or, in other words, R. C. Wilson held the title as trustee for such creditors. [Bobb v. Woodward, 50 Mo. 95; Ryland v. Callison, 54 Mo. 513.]"

In the case at bar defendant Rogers had the purpose to buy the land. In the execution of his purpose he prevented a fair and open sale by buying off a prospective opposing bidder. Before the sale he made the promise which affected his purpose to suppress the bidder. After the sale and acceptance of another bid, he paid the promised compensation; leading to the conclusion that he felt he was proceeding in the accomplishment of his purpose. The next morning he completed the transac-

tion, and obtained the deed direct from the trustee, but, arriving at the final agreement he says, as to price, through Simpson who was acting for McKim. There was an unbroken continuity of purpose and of acts from the beginning to the end. And even if it be assumed that McKim acquired a right of disposition of this land free of any equities in the mortgagor, there was one limitation upon that right. There was one man who was disqualified from acquiring the rights to the land from McKim, because, whatever right Rogers obtained from McKim was tainted with the original wrong which Rogers inflicted upon the mortgagor. [First National Bank v. Wilson, supra.] And his wrong motive and wrong conduct culminated only in the acquisition of the trustee's deed, and must be presumed to have continued, and inhered in the very act of acquiring the deed. [State v. Bersch, 276 Mo. 397, 419.]

The intervention of McKim does not aid the defendant, under the undisputed facts in this case. Defendant's acts were against public policy, and constituted a particular wrong against the mortgagor. His payment of $500 to McKim, did not absolve him for the wrong done to McDaniel, the mortgagor. Our conclusion is that the plaintiffs should be given a reasonable time in which to redeem the land. The testimony as to the value of the land at the time of the sale was conflicting, and fell into two estimates. A number of witnesses placed the value at $30 an acre. A like number testified that it was worth $60 an acre. The sale was for a little more than $27 an acre. Had the sale been made without fraudulent interference, the inadequacy of price alone would not demand that it be set aside.

The plaintiffs asked in their petition that they be allowed a reasonable time in which to pay the purchase money to the defendant Rogers. This, coupled with their general prayer for relief, is a sufficient offer in a case of this kind under the rule which has prevailed in this court in like cases. [Kline v. Vogel, 90 Mo. 239; Jopling v. Walton, 138 Mo. 485.]

The defendant should be charged with the fair rental value of the land since he took possession. He should receive recompense for the amount paid to the trustee and for taxes paid, with interest, and also the cost of the permanent improvements made by him. An accounting of these should be made by the court, and upon ascertaining the amount to be paid by plaintiffs to defendant Rogers, a reasonable time thereafter should be given them in which to redeem the land. A period of three months is regarded as a reasonable time, after ascertainment of the amount due. If payment be not made within that time, the plaintiffs' bill should be dismissed.

The judgment of the circuit court is reversed, and the case remanded for further proceedings in accordance with the views herein expressed. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by Lindsay, C., is hereby adopted as the opinion of the court; *James T. Blair, Woodson* and *Ragland, JJ.,* concur; *Graves, P. J.,* concurs in paragraphs 1, 2 and 3 and the result.