[Civ. No. 4108.  Third Appellate District.—May 22, 1930.]

LOS ANGELES INVESTMENT COMPANY (a Corporation), Appellant, v. EDWARD D. TORCHIA et al., Respondents.

Flint & Mackay, E. W. Miller and Franklin W. Peck for Appellant.

Hewitt, Ford & Crump, J. F. Moroney and W. Joseph Ford for Respondents.

PLUMMER, J.—The plaintiff in this action appeals from a judgment entered in the above-entitled cause denying other than injunctive relief, wherein the plaintiff sought, under the provisions of section 1109 of the Civil Code, to have declared forfeited the title to certain real property located in the city of Los Angeles, particularly described as lot 1 in block 5 of Kendall's Berry Tract, and to obtain a reconveyance thereof.

The transcript shows that on and prior to June 13, 1915, the plaintiff was the owner of the above-described land, and on said date executed and delivered a deed thereto to Annie May Marston. This deed of conveyance contained the following limitations and conditions:

"It is hereby covenanted and agreed by and between the parties hereto, and it is a part of the consideration of this indenture, that no building, porch or other portion of building, fence or structure of any kind shall be erected on said lot or lots nearer than 40 feet to the front of said lot or lots; that no building for residence purposes shall be erected on said lot or lots which shall cost less than $2500.00, and that no building on said lot or lots shall be used for any purpose except for residence and the necessary outbuildings; that the said property shall not be sold, leased or rented to any persons other than of the Caucasian race, nor shall any person or persons other than the Caucasian race, be permitted to occupy said lot or lots.

"Provided, further, that a breach of any of the foregoing conditions shall cause said premises to revert to the said grantors, their successors, devisees or assigns, each of whom, respectively, shall have the right of immediate re-entry upon said premises in the event of said breach.

"Provided, also, that the breach of any of the foregoing conditions, or any re-entry by reason of such breach, shall not defeat nor render invalid the lien of any mortgage or deed of trust made in good faith and for value."

The deed further provided that the condition subsequent above specified should expire on the first day of January, 1930.

The title to the above lot was, on the twenty-fifth day of April, 1922, transferred to the defendants Edward D. Torchia and Bridget Torchia, who were in possession of said premises at the date of the institution of this action.

Subsequent to acquiring title the defendants Torchia engaged in two separate and distinct lines of transaction, one of which was found by the court to be in strict compliance with the provisions of the deed of conveyance executed and delivered by the plaintiffs to Annie May Marston, and the other to be in contravention of the conditions subsequent contained in the deed. In this appeal it is attempted to enforce forfeiture against one who had advanced money to the defendants Torchia, to enable them to erect a building upon the lot, in contravention of the terms of the Marston conveyance, who acquired title to the premises from one who obtained title thereto coming down through the transactions not charged with any taint or violation, and with which line of transactions the parties subsequently acquiring title had absolutely no connection whatever. The alleged tainted line of transaction is as follows: On May 6, 1925, the defendants Torchia executed their promissory note for $20,200, in favor of the defendant LeRoy F. Pitcher, and secured the same by a deed of trust upon the real property heretofore mentioned. The money so obtained by the defendants Torchia was used in the erection of a building upon the premises, not in compliance with the conditions in the deed, and the establishing and maintaining of a tailor-shop therein, in contravention of the restrictive clauses of the deed.

The transaction found by the court to violate the conditions contained in the Marston deed is set forth in finding No. 10 of the court, as follows: "All of the allegations of Paragraph XVI of the amended complaint are true." (This paragraph refers to the loaning to the defendant Torchia by the defendant Pitcher of the sum of $20,200 and the erection upon the lot referred to of a brick building, and then alleges that the defendant Pitcher knew that the money loaned was to be used for the purpose of erecting a building on said premises in contravention of

the restrictions in the deed, and the use of the same in the restriction of the deed.) "Except that it is not true that the defendant LeRoy F. Pitcher knew or had any actual notice of the existence of any condition or restriction on said lot 1 in block 5 at any time prior to the filing of plaintiff's complaint herein; and except that while defendant Pitcher did have the constructive notice of such conditions and restrictions afforded by the recordation of the deed conveying said premises to defendants Torchia, and the deed from plaintiff to said. Annie May Marston, he did not intend at any time to loan any money to defendants Torchia or to advance any money for the purpose of enabling them, or anyone else, to violate any restriction or condition; nor did he intend to assist them, or anyone else, to violate any restriction or condition; nor did he intend to violate any restriction or. condition himself. Said Pitcher at all times acted in good faith, and invested upwards of $15,000 of his own funds as building contractor for defendants Torchia in the construction of a building on said premises, in ignorance (except for such constructive notice), of the existence of any building or other restriction or condition on and against said lot 1 in block 5, and in the belief that there were no conditions or restrictions on and against said property." It was upon this finding that the court concluded that the note and trust deed made in favor of Pitcher placed him in the position of an encumbrancer with notice, and that his rights under the note and the trust deed were subject to the restrictions in favor of the plaintiff in this action.

The line of transactions held by the court to have been had under the provisions of the Marston deed, which provided that the conditions subsequent should not defeat or render invalid the lien of any mortgage or deed of trust made in good faith and for value, is as follows: On the eleventh day of July, 1923, the defendants Torchia executed their promissory note for $4,500 in favor of the Second Avenue State Bank of Los Angeles, and to secure this note gave to the bank a mortgage upon said lot 1 in block 5. The court found that the bank knew that the defendants Torchia intended to use this money for construction purposes in violation of the restrictions of the deed under which they deraigned title. On the thirty-first day of October,

1923, the Second Avenue State Bank indorsed and transferred said note and mortgage to Ellen C. Carr and Marguerite Carr, who purchased for a valuable consideration, and the court found that the Carrs paid full value for the note and mortgage and were encumbrancers in good faith, and without knowledge or notice of the uses or purposes for which the money, evidenced by the note, had been put, or of the intended purpose to which the money was put, or to be put by the defendants Torchia, and that said Carrs had no knowledge that the defendants Torchia intended to violate any of the restrictions. On August 11, 1924, the Carrs indorsed and transferred said note and mortgage to the defendant Ira C. Overell, who paid full consideration therefor, who took the same in good faith and without knowledge of any of the circumstances under which, or the purposes for which the note and mortgage were originally given. Thereafter Overell foreclosed said mortgage, and on the third day of December, 1924, a decree was entered ordering the sale of said lot, and on May 11, 1925, the lot involved herein was sold by the sheriff to Overell. On May 8, 1926, Overell assigned his sheriff's certificate to the defendant in intervention, the Liberty Mortgage Company, and thereafter, no redemption having been made, a sheriff's deed was issued to the Liberty Mortgage Company, which took title for the benefit of the defendant Pitcher.

While the record shows and the court found that the defendant Pitcher had constructive notice of the restrictions contained in the conveyances by which the defendants Torchia deraigned title, it also was found by the court, and we think the record bears out the finding, that the defendant Pitcher at all times acted in good faith, and is not chargeable with any actual or constructive fraud. So far as his lien on the property is concerned, it was to secure money in the erection of a building which was in violation of the restrictive clauses, and while the defendant Pitcher had only constructive notice of the restrictions, he did know that the money loaned by him was being used in the erection of buildings on the lot.

The court also found, and we think the record bears out the finding, and likewise the conclusion of the court, that the defendant Pitcher had absolutely nothing to do with any of the transactions leading up to the judgment of

foreclosure and sheriff's sale and sheriff's deed which we have set forth herein. So far as that line of transactions is concerned, Pitcher stands in the same relation as an absolute stranger.

While his loaning money for the erection of a building, in violation of the restrictive clauses, was at his own peril, there is nothing in any of his transactions in any way related to, or which by any logical reasoning can be connected with the title coming down through the mortgage which eventually terminated in foreclosure proceedings. In other words, the defendant Pitcher is not shown by the record to have done anything in fraud of the title coming down through the sheriff's sale and acquired by the defendant and intervener, Liberty Mortgage Company, for his benefit. In other words, he is not a party to any fraud affecting that conveyance, or anything leading up thereto. Pitcher was never an owner of or the possessor of any interest in the mortgage which ultimated in foreclosure proceedings. He was not the owner of nor anywise interested in the note, to secure the payment of which said mortgage was executed. Pitcher was not at any time in the position of a former owner of any interest in either said note or mortgage. The fact that he had a mortgage or trust deed of his own is not a basis upon which an argument can be predicated that he stands in the relation of a former owner in the note and mortgage, the nonpayment of which led up to the foreclosure and sale herein mentioned. That his own note and mortgage or trust deed was subject to the rights of the plaintiff by reason of the constructive notice attendant upon the recordation of the Marston and Torchia deeds has no bearing upon the issues tendered upon this appeal. There is no showing that Pitcher acted other than in good faith, or that he was guilty of any moral turpitude in relation to any of the transactions which we have mentioned, and it is only by losing sight of what we have mentioned that a confusion of ideas has apparently crept into the argument in this cause, and has led to the following statement by appellants as to the law applicable to this case, to wit: "We are familiar with the rule that a purchaser with mere notice from a purchaser without notice, takes the title to real property freed from any adverse claims or equities existing in favor of third

persons. There is an exception to this rule, however, which is that one who is a party or lends himself to any fraud or illegal conduct in relation to the title to real property cannot thereafter, by accepting a conveyance of the property from an innocent purchaser, become clothed with the rights of a purchaser with notice, from a purchaser without notice.'' *In making this statement appellant loses sight of the essential fact that fraud or illegal conduct must be in relation to the title which such person subsequently acquires.* As we have stated, what defendant Pitcher did has no relation to any act bearing upon or in any way impeaching the title which he acquired subsequently. The rule of law applicable to this case is thus stated in volume 2 of Pomeroy's Equity Jurisprudence, beginning on page 1548, fourth edition: ''There are two special rules on the subject, which have been settled since an early day, one being a mere application of the general doctrine, and the other a necessary inference from it. The first is, that if a second purchaser, for value and without notice, purchases from a first purchaser who is charged with notice, he thereafter becomes a *bona fide* purchaser and is entitled to protection. This statement may be generalized. If the title to land, having passed through successive grantees, and subject in the hands of each to prior outstanding equities, comes to a purchaser for value and without notice, it is at once freed from these equities; he obtains a valid title, and with a single exception, the full power of disposition. This exception is, that such a title cannot be conveyed free from the prior equities, back to a former owner who was charged with notice. If 'A,' holding title affected with notice, conveys to 'B,' a *bona fide* purchaser, and afterwards takes a reconveyance to himself, all the equities revive and attach to the lands in his hands, since the doctrine requires not only valuable consideration and absence of notice, but also good faith. The second rule is, that if a second purchaser with notice acquires title from a first purchaser who was without notice, and *bona fide,* he succeeds to all the rights of his immediate grantor. In fact, when land once comes, freed from equities, into the hands of a *bona fide* purchaser, he obtains a complete *jus disponendi,* with the exception last above mentioned, and may transfer a perfect title even to volunteers.'' Neither the defendant LeRoy F. Pitcher nor

the defendant and intervener Liberty Mortgage Company ever had title to the land. It never passed through either of said defendants, and, therefore, no equities could be chargeable against them in relation to the lot in question. The only basis upon which it could be predicated that LeRoy F. Pitcher could have been subject to a forfeiture by reason of becoming a purchaser of the title, would have been a proceeding to foreclose his own trust deed, and upon the sale of the premises under such deed, becoming a purchaser, and thereafter, selling the premises to one without notice, and then receiving a subsequent conveyance from the one to whom he had sold. That, however, is not this case, but is the substance of the theory upon which appellant's argument is made. The appellant relies upon the quotation which we have taken from Pomeroy's Equity Jurisprudence, but apparently overlooks the distinction which we have drawn in the line of transactions set forth herein. The same rule appears in volume 2 of Tiffany on Real Property, page 2257, cited by appellant, but likewise misconstrued. The case of *Huling* v. *Abbott*, 86 Cal. 423 [25 Pac. 4], follows exactly the same rule which we have stated and the application which we have made.

In the case of *Johnson* v. *Gibson*, 116 Ill. 294 [6 N. E. 205, 211], cited by appellant, we find the following: ''While such innocent purchasers would have been protected, yet when the property was reconveyed to her (referring to the one who is charged with equities) as it was before the final decree was entered in that suit, it became again subject, in her hands, as it was before the payment of her husband's debts.''

The case of *Bourquin* v. *Bourquin*, 120 Ga. 115 [47 S. E. 639, 640], lays down no contrary rule to what we have stated. We take therefrom the following, which sufficiently shows the correctness of what we have stated: ''When the title revests in the wrongdoer, original equity will reattach to it in his hands.'' All of the cases follow this rule, but the title had never vested in Pitcher; he conveyed no title and participated in no transfer which led to the foreclosure, sale and sheriff's deed.

Nor does the case of *Yost* v. *Critcher*, 112 Va. 870 [72 S. E. 594], trench upon anything contained herein. To make it applicable there would had to have been a sale

under the Pitcher mortgage or trust deed to other than to Pitcher, and then a purchase from and reconveyance to Pitcher from the one purchasing at Pitcher's foreclosure and sale.

We do not need to spend time in reviewing any of the other cases cited by appellant because when analyzed they are not in any respect authorities against the ruling of the trial court in this case. One of the cases involved confidential relations, and if anything is said in the opinion contrary to what we have set forth, it is to that extent out of harmony with the great weight of authority.

After judgment had been entered herein the appellant made a motion that the judgment be vacated, and that a judgment be entered upon the findings declaring a forfeiture of the premises. What we have said in relation to the judgment in this cause we think constitutes a complete answer to the appellant's motion to set aside and enter a different judgment, and therefore the denial of appellant's motion, alleged as error, need not be considered.

The judgment of the trial court is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 21, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 21, 1930.