*244
 
 PbaksoN, J.
 

 The defendant Kelly opposes the plaintiff’s right to a decree, on three grounds. 1st. lie-contends that the failure of the plaintiff to pay the purchase-money, within reasonable time after it was due, her direction to Person not to make any further payment on the order, and her receiving the money from Person, and subsequent inability to pay the balance of the purchase-money, amounted to a repudiation of the contract on her part at least so as to take from her tiro right to come into a Court of Equity for a specific performance, and put her to an action at law for a breach of the contract. The defendant retained the order on Person, and could at any time have sued the plaintiff for the balance, so as to force her into measures. This he neglected to do.
 
 Scarlett
 
 v. Hunter, 3 Jones’ Eq. 84;
 
 Falls
 
 v.
 
 Carpenter,
 
 1 Dev. and Bat. Eq. 237, are decisive against the defendant. “ In Equity, time is not of the essence of a contract for the payment of money.” 2nd. He alleges that the contract was rescinded by mutual consent. It is not necessary to decide whether a
 
 written
 
 contz-act
 
 to
 
 convey land can be rescinded by a parol agreement; for this allegation is not sustained by the evidence. The parties talked about rescinding the contract, and both were willing to do so, after the plaintiff had received and used her pension monejq. which was the only fund ever looked to for the payment of the purchase-money; but they could not agree upon the details. The defendant insisted upon being allowed occupation rent, by way of deduction from the amount that had been jzaid, and required as a condition precedent, that the possession of the land should be given up to him. The plaintiff seems to have objected to the allowance of rent, and, in particular, stated her inability to give up the possession, because her father was living on the land, and she could not get him to leave it. This-, we have no doubt, was the principal difficult}^, but it is sufficient that, for some cause or other, the parties never did come to a positive and absolute agreement to rescind. 3rd. He avers that, before the bill was filed, he had sold and conveyed the land, for a valuable consideration, to the other defendants, and, so a specific performance by him is impracticable. Admitting
 
 *245
 
 this allegation, tlie plaintiff insists that, if she is not able to get the land from the other defendants, who are made parties by the amended bills, on the ground that they had notice of her equity, then, she is at liberty, under the general prayer for a relief, to fall back upon her secondary equity, and by ratifying the sale, charge the defendant Nelly with the price he received for the land, deducting the amount of the purchase-money, with its interest, that is still due on her contract.
 

 It is held in
 
 Scarlett
 
 v. Hunter, and is, in fact, a familiar principle, that where there is a contract for the sale of land, the vendee is considered in Equity as the owner, and the vendor retains the title as a security for the purchase-money. So, the effect of the contract was, that the defendant held the laud as trustee to secure the balance of the purchase-money, and then in trust for the plaintiff. This brings the case within another familiar principle: that where a trustee converts the fund, the
 
 cestui que use
 
 has a right to follow the fund and take it in its changed shape; as, where a guardian invests the ward’s money in the purchase of land, the ward may elect to have the land; so here, wo can see no reason why the
 
 cestui que use
 
 may not, if she chooses, have the price which was realized by a sale of the land. "What right has the trustee to say that ho should bo allowed to retain the profit made by his sale ? It was a breach of trust. Can lie take advantage of his own wrong, and ask a Court of Equity to drive the injured
 
 cestui que use
 
 to her action at law, for damages on the contract ?
 

 In
 
 Cheshire v. Cheshire,
 
 2 Ire. Eq. 569, one entitled to slaves, after a life estate, (the slaves having been run out of the State •and sold by the particular tenant), was allowed to elect to take the fund in its changed form; that is, the money for which the slaves had been sold.
 

 In
 
 Daniels
 
 v.
 
 Davidson,
 
 16 Ves., jr., 249, where a seller, after a contract for sale, sold at an advanced price to another person, the bill filed by the first purchaser prayed that, if the second purchaser bought without notice, so that the land could not be reached, the seller might account to the plaintiff for the advanced price. It was not necessary to decide the point,
 
 *246
 
 but Lord EldoN seoms to have bad no doubt about this secondary equity of the plaintiff'. Such was clearly the opinion of Sir Edwaed SugdeN. See 1 Sugden on Vendors, &c., 277. In fact, “ the reason of the thing,” is so clear, that no authority is necessary to establish it.
 

 The other defendants oppose the plaintiff’s right to a decree against them, on the ground that they purchased without notice. As there is no suggestion that the defendant Kelly is not able to pay the amount for which he is liable, it would be unnecessary to decide the matter as to these defendants, except for the fact, that the plaintiff insists upon her right to have the land, together with extensive improvements that have been put on.it, provided she can fix them with notice. She charges that they had notice in three ways. 1st. By express notice of her contract. 2nd. Under the doctrine of
 
 lis pendens.
 
 3rd. Constructive notice, by reason of the fact, that she was in possession as tenant of Kelly at the time they took the conveyance from him.
 

 Itmay.be well to simplify the case, by disposing of the defendants Woody and Thomas Dixon, who are brought in by the second amended bill. They admit that when they purchased of “the Dixons,” they had notice of the plaintiff’s alleged equity under Kelly’s contract, but they insist that “the Dixons” had purchased from Kelly without notice; and claim the benefit of the want of notice to their vendors. It is settled, that a purchaser from one who purchased without notice, is entitled to the benefit of that fact, although such second purchaser had notice when he bought; in other words, he is in no worse situation than his vendor, and stands or falls with him;
 
 Harrison
 
 v.
 
 Forth;
 
 Prec. Ch. 51;
 
 Brandlyn
 
 v.
 
 Ord,
 
 1 Atk. 571; 2 Atk. 242; Sugden on Vendors, 314.
 

 1st. The defendants, “ the Dixons,” deny that they had notice before they took the conveyance from Kelly, and say the first intimation they had of the contract by Kelly to plaintiff, was some days after the conveyance was executed, when, having entered on the land in order to clear up a foundation for the erection of the mills, plaintiff showed them the con
 
 *247
 
 tract. This allegation is responsive, and there is no.proof to the contrary; indeed we are satisfied by the evidence that it is true.
 

 2nd. The plaintiff alleges that, before the sale by Kelly to
 
 “
 
 the Dixons,” Kelly had commenced an action of ejectment against her and her father, who was living with her on the land, and that this action was pending when they bought of Kelly, and insists upon the doctrine of “
 
 Us pendens.”
 
 There is a total misconception as to' the application of this doctrine. "Where one purchases from a
 
 defendant
 
 the subject-matter of a suit which is pending, he tabes, subject to the plaintiff’s recovery, and is bound to know, or rather is presumed to know, of its pendency. This presumption is made to prevent evasion, and to ensure to plaintiffs the fruit of their recovery; for “ unless regard should be paid to it, all decrees and the justice.of the Court might be wholly evaded; since the defendant, pending the suit, might alien to one who, after the bill should be amended, might alien again, by which moans suits and decrees in this Court would be rendered vain.”
 
 Sorrell
 
 v. Carpenter, 2 P. Will. 482. It is no more than an adoption of the rule in a real action at common law, where, if the defendant aliens after the pendency of the writ, the judgment will over-reach such alienation ;
 
 Murray
 
 v.
 
 Ballou,
 
 1 John. Ch. Rep. 577. “ The Dixons” bought of the plaintiff" in that action. There is no ground for a legal presumption, that they know of its pendency, and that the plaintiff, in this suit, was resisting a recovery at law, when she had no pre-tence of more than an equitable title.
 

 3rd. The plaintiff had entered into possession as the tenant of Kelly for one year, and then held over, under the contract of sale. This prevented her possession from being adverse, otherwise the deed from Kelly to the Dixons would have been inoperative, and the legal title would have remained in him, and had a very important bearing on the rights of the parties. The fact that Kelly had instituted an action of ejectment against the plaintiff, who was holding over as his tenant at sufferance, did not make her possession adverse so as
 
 *248
 
 to render his deed inoperative ; for she w'as estopped, having entered as his tenant, from denying his title until she had surrendered the possession up to him ; accordingly, the fact of the plaintiff’s being in possession is not relied on as having the effect of making the conveyance of Kelly inoperative ; but, the bill charges that the legal title passed to the Dixons, and relies on her possession as amounting to constructive notice, so as to put them on enquiry, and fix them with notice of such facts as a full enquiry would have put them in possession of; that is to saj7: plaintiff held Kelly’s contract, but was unable to pay for the land; she and Kelly were both willing to rescind the contract, but differed as to the allowance of rent; and the plaintiff was unable to give up the possession, as Kelly insisted she ought to do, because her father would not leave the place ; the plaintiff was willing for Kelly to sell and pay himself in that way, but insisted that she ought to have the benefit of the resale; at one time she agreed that Kelly might sell to one Ritter, but a sale was not effected, in consequence of the obstinacy of her father. "With a knowledge of these facts, the Dixons were not guilty of a fraud in buying from Kelly, so as to affect their consciences and give the plaintiff an equity to call on them for the land ; on the contrary, the imputation of fraud rests on her; for ■ when informed that they had bought of Kelly, she did not object to the sale, but was willing, and, in fact, urged them to go on with the contemplated improvements, assuring
 
 them
 
 that if she succeeded in establishing her right, she would let them keep the land, upon being paid the price they had paid Kelly. This was all she insisted on, and offered to give them a bond to make title on that condition, which they declined to accept, as they relied on Kelly’s warranty, and did not believe her title could be established. After thus urging them to make expensive improvements, we say the imputa-’ tion of fraud rests on her attempt, now, to take from them the land, together with the improvements. Iler sense of equity was more accurate at the first, when she insisted, that she
 
 *249
 
 ouglit to have the benefit of the pu-ice obtained by Kelly. That, we think, is the relief to which she is entitled.
 

 It has, in several cases, been intimated by this Court, that the English doctrine, that a purchaser is bound to see to the application of the purchase-money, has never obtained in this State. ¥e wdsh not to be understood as favoring that doctrine, and yet, under the particular circumstances proven in this case, if the defendant Kelly is unable to pay the part of the price to which the plaintiif is entitled, wre are of opinion that the other defendants are liable for it, secondarily. They protect themselves under the allegation that the plaintiff had authorised Kelly to sell, and then induced them to make expensive improvements. Of course then, they are bound by the condition under which she agreed that Kelly might sell, and under which she induced them to make the improvements, which was, that- after Kelly was paid for the land, the benefit of the increased price should enure to her.
 

 There will be a decree for plaintiff, and a reference to ascertain the amount of the price received by Kcdly, and the balance of the purchase-money with its interest still due by plaintiff, so as to fix the sum to which the plaintiff is entitled.
 

 Per Curiam, Decree accordingly.