## THE TROY CITY BANK VS. WILCOX.

### *Constructive trust.*

1. One who procures and puts on record a deed of land in fraud of the rights of a prior grantee whose deed is not recorded, becomes a trustee of the legal title for him.
2. Where such title, after a transfer to an innocent purchaser, revests in such fraudulent grantee, the trust re-attaches to it.

APPEAL from the Circuit Court for *Douglas* County.

Action to remove an alleged cloud upon plaintiff's title to land, etc.   The facts alleged in the complaint are substantially as follows : On the 1st of November, 1854, John Matson, who had duly pre-empted and paid for, and was well seized in fee and in actual possession and occupancy of, the S. E. qr. of sec. 24 of a certain town in said county, conveyed the same by warranty deed to one Ely for $3,500 to him in hand paid.* Ely immediately went into possession and occupancy under his deed, and, in January, 1855, platted the land as a town site, and the plat was duly recorded on the 18th of that month.   On the third of September, 1855, a patent for the land was issued to Matson, and, on the 23d of January, 1856, he again, for a valuable consideration, executed to Ely a warranty deed of said quarter section, which was duly recorded February 19, 1856.   In February, 1855, Ely, for a valuable consideration, conveyed a certain described portion of said land (being the premises here in dispute), to one Marshall, who, in 1861, conveyed the same, for a valuable consideration, to the corporation known as the President, Directors and Company of the Troy City Bank ; and this corporation afterward, on the expiration of its charter, duly conveyed the same to the present plaintiff, a corporation

* This deed was so defective as not to be entitled to registry. See *Ely v. Wilcox*, 20 Wis. 523, 531.

then organized, consisting of the same stockholders and corporators as that first named; and said plaintiff corporation is now the owner and well seized of said premises, and entitled to the quiet possession and enjoyment thereof. On the *twelfth* of September, 1855, the defendant, *Nathaniel Green Wilcox*, well knowing the facts above alleged, so far as they had occurred before that day, and having then in his possession, as Matson's agent, the patent which had been issued to the latter, but fraudulently concealing that fact from Matson, secretly, and for the purpose of defrauding Ely and his heirs and assigns, represented to Matson that said patent had not been issued, but that it was ready to be issued, and that a certain power of attorney which Matson had before given defendant, authorizing him to receive said patent, was defective, and that, in order to procure the same, it was necessary for Matson to give him another and more perfect power. Defendant thereupon produced an instrument which he represented as such a power of attorney, and procured Matson, in reliance upon his representations, to execute the same and deliver it to him. Said instrument was in fact a quit-claim deed from Matson to defendant. In furtherance of his said fraudulent intent, defendant, on the 15th of October, 1855, caused said deed to be recorded; and, afterward, fraudulently confederating and combining with his brother, Timothy Dwight Wilcox, to cheat and defraud said Ely and his assigns, without any consideration therefor, on the 27th of May, 1856, he deeded said lands to his said brother, and caused the deed to be recorded June 5, 1856. With like fraudulent intent, on the 1st of February, 1857, he procured Timothy Dwight Wilcox to give him a power of attorney (recorded July 6, 1857) authorizing him to convey said land. And, as such attorney, and in the name of Timothy Dwight Wilcox, on the 9th of July, 1866, he conveyed the land to one Stark (who was and is defendant's

The Troy City Bank vs. Wilcox.

attorney and confidential adviser in the premises), and caused the deed to be recorded July 16, 1866. On the 26th of November, 1866, defendant, with like fraudulent intent, procured said Stark to convey said land to him, and had the deed recorded June 7, 1867. Timothy Dwight Wilcox and Stark, at the several times when the deeds to them were made, had full notice and knowledge of the deed of Matson to Ely, and the right of the latter. Defendant now claims legal title to the premises to the exclusion of plaintiff. Prayer, for a decree adjudging the several deeds under which defendant claims to be fraudulent and void, and that they be canceled and annulled; that plaintiff be adjudged to be the owner of the premises; that defendant be required to convey the same to him; that the title be quieted in plaintiff; and that defendant, and all others combining with him, his and their alienees and assigns, be forever enjoined from setting up title, etc., etc.

The court sustained a demurrer to the complaint as not stating a cause of action; and from this order plaintiff appealed.

*Hiram Hayes* (with *Masterson & Simons*, of counsel), for appellant, to the point that defendant, by his fraudulent purchase from Matson, with notice of the equities of Ely and his grantees, made himself a trustee for them, cited 1 Story's Eq. Jur. § 395; 2 id. § 1195; *Pickett v. Loggon*, 14 Ves. 234; *Perkins v. Hays*, 1 Cooke (Tenn.), 166; 1 Amb. 446; *Willet v. Overton*, 2 Root, 338; *Brown v. Lynch*, 1 Paige, 147; *Suydam v. Martin*, Wright, 384; *Benzien v. Lenoir*, 1 N. C. Law Repository, 508; *Ligget v. Wall*, 2 A. K. Marsh, 149; *Simms v. Richardson*, 2 Litt. 274; *Downs v. Downs*, 2 How. (Miss.) 915; *Truesdell v. Callaway*, 6 Mo. 605; *Murray v. Ballou*, 1 Johns, Ch. 566. 2. To the point, that, even if Timothy Dwight Wilcox had been an innocent purchaser for value, the trust in behalf of the plaintiff would have re-attached when the title revested in defendant,

they cited *Bovey v. Smith*, 1 Vern. .60 ; *Armstrong v. Campbell*, 3 Yerg. 201, and cases there cited ; *Oliver v. Piatt*, 3 How. (U. S.) 401 ; *Church v. Church*, 25 Pa. St. 278 ; Lewin on Trusts, 726 ; 1 Story's Eq. Jur. § 410 ; 2 id. § 1261 ; Willard's Eq. Jur. 608 ; Hill on Trustees, 231 ; 1 Sanders on Uses and Trusts, 350, 351 ; Tiffany & Bullard's Law of Trusts, etc., 200.

*Stark & McMullen*, for respondent :

1. Nothing is alleged in the complaint showing that defendant's title is apparently better than plaintiff's, or that his pretended title is a cloud on plaintiff's title. *Moore v. Cord*, 14 Wis. 213 ; *Gamble v. Loop*, id. 465 ; *Meloy v. Dougherty*, 16 id. 269. 2. Plaintiff cannot maintain an action to set aside defendant's deed, on the pretense of fraud on Matson. If plaintiff's title was already perfect under his first deed from Matson, it could not be rendered invalid, or impaired in any degree, by subsequent imposition upon his grantor. If his title was not perfect under his first deed, plaintiff could not acquire by his later deed the right to attack the intervening conveyance to *Wilcox*, on the ground that Matson was induced to give it by fraud. *Crocker v. Bellangee*, 6 Wis. 645.

COLE, J. We think the demurrer to the complaint was improperly sustained. The complaint is quite lengthy, and it is unnecessary to recapitulate its various allegations ; but it is sufficient to say that, in our opinion, it states a good cause of action. True, the plaintiff claims, through a title from John Matson, the original patentee and grantor of the defendant. It claims, likewise, a perfect title in fee through a good and valid conveyance from Matson to Ely, followed by actual and continued possession of the premises for some time before the deed from Matson to defendant. Now it is said in support of the demurrer, that there is nothing alleged in the complaint which shows that the plaintiff is entitled to

the relief asked. But it seems to us very evident that the plaintiff cannot have the full enjoyment of the property mentioned in the complaint, while the deeds under which the defendant claims remain uncanceled upon the record. As is well observed by the counsel for the plaintiff in his brief, no prudent man would purchase from the plaintiff at the same price — if he would at all — as if those deeds had not been executed, or were declared void; and therefore, for all practical purposes, they constitute a most serious cloud upon the title. The provision of our statute is very broad, which gives a party having possession and the legal title to land the right to institute an action against any other person setting up a claim thereto (R. S. chap. 141, § 29); and that the plaintiff is entitled to the relief it asks under this provision, there can be no reason to doubt. The complaint clearly shows that the defendant is a fraudulent grantee, obtaining his title first from Matson through gross fraud and imposition upon him, and with the design to cheat the plaintiff, the grantee of Marshall. And, indeed, in the case of *Ely v. Wilcox* (20 Wis. 523), it was stated that the defendant knew of the rights of Ely when he purchased, and was, in fact, a fraudulent grantee; and the case is made stronger against him in the present complaint. It is further objected, that the main ground of relief stated and relied on in the complaint, is the pretended fraud and deception practiced by the defendant upon John Matson, by means of which he obtained a conveyance from him; but that the plaintiff has no right to set aside the defendant's deed on the pretense of fraud upon Matson. But it is very manifest, that, upon the statements in the complaint, the defendant not only perpetrated a gross fraud upon Matson, but likewise upon the plaintiff, which is the party most injured by that conveyance. For when the defendant procured that conveyance from Matson, he had actual knowledge of the prior conveyance from Matson to Ely,

and from Ely to Marshall, and was fully advised of the equities of the plaintiff in the property in controversy, and he took that conveyance with the intent and for the purpose of cheating and defrauding the plaintiff. It was, therefore, a meditated fraud upon the rights of the plaintiff, as well as a gross imposition upon Matson. To redress this fraud and injury upon its own rights, the plaintiff asks that these conveyances be set aside. The case is clearly distinguishable from that of *Crocker v. Bellangee*, 6 Wis. 645.

It is alleged in the complaint, that the defendant, in furtherance of his fraudulent intent and purpose, and the more effectually to accomplish the same, fraudulently confederating with his brother Timothy Dwight Wilcox, executed the deed bearing date May 27, 1856. This being so, it necessarily follows that Dwight Wilcox was not an innocent purchaser for a valuable consideration, without notice of the prior conveyances, as he was held to be in *Ely v. Wilcox*. But even if Timothy Dwight Wilcox were a *bona fide* purchaser for a valuable consideration, without notice of those conveyances, still, according to the doctrine established by the authorities cited by the plaintiff's counsel, as the defendant was originally a trustee of the plaintiff by reason of his fraudulent acts, upon his re-purchase of the estate, the original equity will re-attach to it in his hands. It is true, the property could not be taken from a *bona fide* purchaser without notice of the trust. Nor, as a general rule, could it be defeated in the hands of a purchaser with notice from one who had purchased without notice: "for," says Mr. Justice STORY, "a *bona fide* purchase of an estate, for a valuable consideration, purges away the equity from the estate, in the hands of all persons who may derive title under it, *with the exception of the original party, whose conscience stands bound by the violation of his trust and meditated fraud*. But if the estate becomes revested in him, the original equity

will re-attach to it in his hands." 1 Story's Eq. Jur. § 140. This, and the other authorities cited, are quite conclusive upon that question ; but it is unnecessary to dwell upon the point now, inasmuch as the complaint shows that Timothy Dwight Wilcox was an actual party to the fraud.

*By the Court.* —The order of the circuit court sustaining the demurrer to the complaint, is reversed, and the cause remanded for further proceedings.