INDEPENDENT COAL & COKE COMPANY ET AL. *v.* UNITED STATES ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 300. Argued April 26, 1927.—Decided May 31, 1927.

1. A bill in the nature of a supplemental bill is appropriate for securing the benefits of a former decree when further relief to that end is made necessary by subsequent events. P. 647.

2. In determining the scope of such a bill and the relief that may be given upon it, the pleadings and proceedings of the earlier suit may be considered, when their nature is disclosed by the former decree and opinion, set up in the supplementary bill. P. 647.

3. One who, by fraudulent misrepresentation, induced a State to select, and the Government to convey to it, public lands of a kind not subject to such selection, and obtained the equitable title from the State; who was perpetually enjoined, in a suit by the United States, to which the State was not a party, from setting up or making any claim to the lands, by decree establishing the fraud

and declaring the United States the owner; and who subsequently, by a conveyance from the State, acquired the legal title, holds that title as a constructive trustee for the United States, even assuming that it was unassailable in the hands of the State because of the statute of limitations. P. 647.

4. Unless *bona fide,* a purchaser under a title which has been acquired by fraud takes subject to the equities of the defrauded owner. P. 649.

5. *Bona fide* purchase is an affirmative defense. P. 650.

6. Statutes of limitation against the United States are strictly construed. P. 650.

7. Whether a certification of public land is within the statute limiting suits by the United States to vacate or annul patents—not decided. P. 650.

8. Where land has been certified to and sold by a State, a suit by the United States to regain the title from the purchaser because of fraud in procuring the certification is not a suit to cancel it. P. 650.

9 F. (2d) 517, affirmed.

CERTIORARI (270 U. S. 639) to a decree of the Circuit Court of Appeals, which reversed a decree of the District Court dismissing a bill brought by the United States to impress a constructive trust on the legal title to coal lands which had been certified to the State of Utah as agricultural, and sold. It was in aid of a former suit (228 Fed. 431) in which the United States was decreed to be the owner of the equitable title, upon the ground that the certification had been procured by fraud.

Mr. *Mahlon E. Wilson,* with whom *Messrs. William D. Riter* and *Albert R. Barnes* were on the brief, for petitioner Independent Coal & Coke Co.

Mr. *Frank K. Nebeker,* with whom *Mr. Samuel A. King* was on the brief, for petitioner Carbon County Land Co.

Mr. *Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Mr. Randolph S. Collins,* Attorney in the Department of Justice, were on the brief, for the United States.

*Messrs. Harvey H. Cluff,* Attorney General of Utah, and *W. Halverson Farr,* Assistant Attorney General, filed a brief as *amici curiae* on behalf of the State of Utah, by special leave of Court.

MR. JUSTICE STONE delivered the opinion of the Court.

This is a second suit by the United States, and is in aid of the first, for the restoration to the government of some fifty-five hundred acres of public lands located in Utah, title to which was procured by a fraud perpetrated upon the land officers of the United States. The first suit, which resulted in a judgment for the government (affirmed 228 Fed. 431), was predicated upon the following circumstances.

The United States, in 1894, made a grant of public lands to the State of Utah to aid in the establishment of an agricultural college, certain schools and asylums and for other purposes. (§§ 8 and 10, Act of July 16, 1894, c. 138, 28 Stat. 107, 109, 110.) Mineral lands were not included. See *Milner* v. *United States,* 228 Fed. 431, 439; *United States* v. *Sweet,* 245 U. S. 563; *Mullan* v. *United States,* 118 U. S. 271, 276; § 2318 R. S. The grant was not of lands in place. Selections were to be made by the state with the approval of the Secretary of the Interior, from unappropriated public lands, in such manner as the legislature should provide. The legislature (Laws, Utah, 1896, c. 80) later created a board of land commissioners with general supervisory powers over the disposition of the lands and with authority to select particular lands under the grants.

During the period from December 10, 1900, to September 14, 1903, Milner and others, the predecessors in interest of the Carbon County Land Company, one of the petitioners, made several applications to the State Commission to select and obtain in the name of the state the lands now in question, and at the same time entered

into· agreements with the Commission to purchase the lands from the state. In. aid of the applications and agreements, Milner and his associates filed affidavits with the Commission stating that they were acquainted with the character of these lands which they affirmed were non-mineral and did not contain deposits of coal. They also deposed that the applications were not made for the purpose of fraudulently obtaining mineral holdings, but to acquire the land for agricultural use. The applicants were obviously aware that the affidavits or the information contained in them would in due course be submitted to the Land Office of the United States with the State Commission's selections, as they were in fact. On the faith of· these and other documents,. the selections were approved by the Secretary of the Interior and the tracts in question were certified to the state on various dates, the last being in December, 1904. Certification was the mode of passing title from the United States to the state.

In January, 1907, the United States brought the first suit, against Milner and his associates and the Carbon County Land Company, which had been organized by .Milner to take over the land, and was controlled by him. The suit was founded on the charge that the certifications .were procured by the fraudulent misrepresentations of Milner and the others since they knew at the time of the applications that the lands contained coal deposits. Although the bill in the present case states that the relief asked was the cancellation of the contracts between the state and Milner and his associates, this allegation is apparently inadvertent, for the record elsewhere indicates that the bill in fact sought the quieting of the government's title. It affirmatively appears that on June 8, 1914, the district court entered a decree declaring that the United States " is the owner " and " entitled to the. possession " of the lands in question and that the de-

fendants " have no right, title or interest, or right of pos-
session," and perpetually enjoining them " from setting
up or making any claim to or upon said premises." The
Court of Appeals, in affirming the decree, held that " the
whole transaction was a scheme or conspiracy on the
part of Milner to fraudulently obtain the ownership of
the lands from the United States."

In bringing suit in this form without making the State
of Utah a party, it is evident that the government relied
on the principles announced in *Williams* v. *United States,*
138 U. S. 514. In that case it was held, on a similar state
of facts, that the State of Nevada was not a necessary
party to the suit and that the contract between it and its
purchaser operated to vest the equitable interest in the
lands in him, the legal interest being retained as security
for the purchase price. This Court said:

" The State of Nevada might have intervened. It did
not; doubtless, because it felt it had no real interest. It
was no intentional party to any wrong upon the general
government. If its agency had been used by the wrong-
doer to obtain title from the general government; if, con-
scious of no wrong on its part, it had obtained from the
general government the legal title and conveyed it away
to the alleged wrong-doer, it might justly say that it had
no interest in the controversy, and that it would leave to
the determination of the courts the question of right
between the government and the alleged wrong-doer, and
conform its subsequent action to that determination.
That certainly is the dignified and proper course to be
pursued by a State, which is charged to have been the
innocent instrumentality and agent by which a title to
real estate has been wrongfully obtained from the general
government." (Pp. 516–517.)

The present suit is founded on the allegation that the
State of Utah, not conforming its action to the decision
in the first suit, despite the decree and the findings of

fraud upon which it was based, has conveyed the legal title to the fraudulent purchasers. The bill was filed in May, 1924, against the Carbon County Land Company and the Independent Coal & Coke Company, petitioners here, and others whose interests are not now material. It sets up the equitable title or interest of the United States in the land, based upon the decree in the first suit, a copy of which, with the opinion of the circuit court of appeals in that case, it incorporated; the conveyance by patent of the state's legal interest to petitioner, the Carbon County Land Company; and explains that the Independent Coal & Coke Company was made a party as it claims an interest in a part of the lands, the full nature and extent of which is unknown to plaintiff. The relief asked is that a trust be impressed in favor of plaintiff; that defendants be ordered to convey whatever title they have, subject only to any mortgages the state may have retained in conveying the legal title; and that they be enjoined from mining coal.

The defendants separately moved to dismiss the bill on the ground that it failed to state a cause of action against any of them and that the action was barred by the Statute of Limitations, § 8, Act of March 3, 1891, c. 561, 26 Stat. 1095, 1099, limiting suits by the United States to vacate and annul patents to six years from the date of issue. The judgment of the district court dismissing the bill as barred by the statute was reversed by the court of appeals for the eighth circuit. 9 Fed. (2d) 517. This Court granted certiorari. 270 U. S. 639.

Petitioners maintain that the bill fails to allege any facts showing that the Carbon County Land Company is a trustee of the lands or bound in equity to surrender them to the government. Conceding the full force and effect of the decree in the first suit, they assert that the State of Utah was not a party to it or bound by its decree; that the title of the state, if ever open to attack by

the United States, ripened into an indefeasible title by lapse of time under the six year statute of limitations and that petitioners may clothe themselves with the protection of that title despite the decree in the earlier suit.

We may assume for the purposes of the present case, without deciding, that the state officials were not cognizant of the fraud perpetrated upon the United States and that the legal title of the state was not affected by the decree in the first suit, although the United States in an appropriate proceeding might have procured the annulment of the certification, at least within the period of limitations. Cf. *United States* v. *Sweet, supra; Mullan* v. *United States, supra.* But it does not follow that the defendants in the first suit could receive from the state the fruits of their fraud free of an equitable obligation to make restitution to the government or that the United States could not avail itself of all that was adjudged in its favor by the decree in the first suit, even if its original cause of action against the state were barred. By the contracts of purchase Milner and his associates acquired an equitable interest in the land, *Williams* v. *United States, supra.* Their interest was transferred to the Carbon County Land Company, created and controlled by them for that purpose, as a part of the fraudulent conspiracy condemned in the first suit. The decree in that suit is conclusive that the company was a party to the fraudulent scheme or conspiracy to acquire title to the public lands by using the state and its officials as agencies to procure the transfer. The decree not only established that the United States was the true and full owner of the land to the exclusion of the defendants, but perpetually enjoined them from setting up or making any claim to the lands. This and the issues of fact there resolved in favor of the United States and pleaded here, lead to the conclusion that none of the defendants, nor any claiming under them with notice, could by any legal

device, however ingenious, acquire title from the state free from the taint of their fraud.

The suit is in the nature of a supplemental bill in aid of the former decree and is an appropriate method of securing the benefit of the first decree when subsequent events have made necessary some further relief in order that the plaintiff may enjoy the full fruits of the victory in the first suit.   Cf. *Root* v. *Woolworth,* 150 U. S. 401; *Shields* v. *Thomas,* 18 How. 253, 262; *Thompson* v. *Maxwell,* 95 U. S. 391; Story, Equity Pleading, 10th ed., §§ 338, 339, 345, 351(b), 353, 429, 432.   Cooper, Equity Pleading, 74, 75.   In determining the scope of the present bill and the relief which may be given upon it, we may consider the pleadings and proceedings in the earlier suit, the nature of which are fully disclosed in the opinion and decree in that suit, which are pleaded here.

It is ancient and familiar learning that one who fraudulently procures a conveyance may not defeat the defrauded grantor or protect himself from the consequences of his fraud by having the title conveyed to an innocent third person.   Cf. *Merry* v. *Abney,* Freem. C. C. 151; *Moore* v. *Crawford,* 130 U. S. 122, 128; *Girard Co.* v. *Lamoureux,* 227 Mass. 277; *McDaniel* v. *Sprick,* 297 Mo. 424.   Equity may follow the property until it reaches the hands of an innocent purchaser for value.   Even then the wrongdoer may not reacquire it free of the obligation which equity imposes on one who despoils another of his property by fraud or a breach of trust.   The obligation *in personam* to make restitution persists and may be enforced by compelling a return of the property itself whenever and however it comes into his hands.   *Bovey* v. *Smith,* 1 Vern. 60; *Kennedy* v. *Daly,* 1 Sch. & L. 355, 379; *Williams* v. *Williams,* 118 Mich. 477; *Talbert* v. *Singleton,* 42 Cal. 390; *Schutt* v. *Large,* 6 Barb. 373, 380; *Church* v. *Ruland,* 64 Pa. St. 432, 444; *Troy City Bank* v. *Wilcox,* 24 Wis. 671; Lewin, Trusts, 12th ed., 1102.

So also, a purchaser with notice of an outstanding equity, despite a transfer to an innocent purchaser for value, may not on a later repurchase hold free of the equity. *Clark* v. *McNeal,* 114 N. Y. 287; *McDaniel* v. *Sprick, supra,* 439; *Phillis* v. *Gross,* 32 S. D. 438, 449; *Yost* v. *Critcher,* 112 Va. 870, 876; 2 Pomeroy, Equity, § 754. So here the obligation, having its inception in the fraud which was established in the first suit, has been confirmed by the decree and persists as to every interest acquired by petitioners under the contracts with the state or which may be enjoyed by them as the fruit of their fraud, even though we assume for the moment that the title acquired by them could not have been challenged while in the hands of the state.

It having been adjudicated that the government is the true owner of whatever rights the Land Company acquired under the earlier contracts with the state, the decree must be deemed either to have transferred those rights to the government or to have determined that the government is equitably entitled to have them so transferred. If the former, the government may assert the rights under the contract against the Land Company, as holder of the legal title, as it might against any other purchaser of the land from the state with notice. *Bird* v. *Hall,* 30 Mich. 374. If the latter, the Land Company could not acquire the lands even through a new and independent contract without a surrender of such rights as it had under the earlier contracts; and it could not make the surrender effective against the United States, the real owner, without its assent, unless the state stood in the position of a purchaser for value without notice. To these rights the government is equitably entitled, and hence may at its election claim the benefit of their proceeds in the hands of the Land Company. Cf. *United States* v. *Dunn,* 268 U. S. 121; *Taylor* v. *Kelly,* 56 N. C. 240; *Haughwout & Pomeroy* v. *Murphy,* 22 N. J. Eq., 531, 547.

Even if the title acquired were through a new and independent contract and even though it were not in a strict sense proceeds of the earlier contracts, the relation of the Land Company and its equitable obligation to the government, and its duty under the decree in the first suit, are such as to preclude the acquisition of any outstanding interest in the land in violation of the decree, free of that obligation and duty. Cf. *Keech* v. *Sandford,* Sel. Cas. *61; *Lurie* v. *Pinanski,* 215 Mass. 229; *Anderson* v. *Lemon,* 8 N. Y. 236; *Holridge* v. *Gillespie,* 2 Johnson's Ch. 30; *Griffith* v. *Owen,* L. R. [1907] 1 Ch. 195; *Phillips* v. *Phillips,* L. R. 29 Ch. Div. 673; but cf. *Bevan* v. *Webb,* L. R. [1905] 1 Ch. 620; and see also, *Fair* v. *Brown,* 40 Ia. 209; *Kezer* v. *Clifford,* 59 N. H. 208; *Hall* v. *West-cott,* 15 R. I. 373; *Middletown Savings Bank* v. *Bacharach,* 46 Conn. 513.

We need not inquire now whether there may be defenses to the cause of action stated in the bill. It is enough for present purposes that, despite unskilled draftsmanship, it sets out facts sufficient, on a motion to dismiss, to support the relief prayed.

But it is argued that there are no allegations showing that petitioner, Independent Coal & Coke Company, is a party to the fraud or what interest it claims in the lands, or that it acquired any interest from or under any other party to the transaction. But we think it fairly inferable from the bill, taken as a whole, that the interest alleged to be claimed by the Coal Company was one arising subsequent to the conveyance by the state to the Land Company. The bill sets up title in the United States and its transfer to the state and alleges that the State of Utah, in making its transfer to the Coal Company, relied on the fact that it had not parted with the legal title to the lands at the time of the decree. This in effect is an averment that the interest claimed by the

Coal Company was acquired subsequent to the certification by the United States to the state. Whatever interest it acquired after that event, it took subject to the equities of the United States, and if from the Land Company, subject also to all of the equities against that company, unless the purchase was *bona fide*. *Bona fide* purchase is an affirmative defense. *Wright-Blodgett Co.* v. *United States*, 236 U. S. 397, 403.

The Statute of Limitations relied on provides that suits by the United States " to vacate and annul any patent . . . shall only be brought within six years after the date of the issuance of such patents." A point much argued here was whether a certification of public lands is a patent within the meaning of the statute. But that is a question which we need not decide. Statutes of limitation against the United States are to be narrowly construed. *United States* v. *Whited & Wheless*, 246 U. S. 552, 561. And we think it plain that the present suit, founded on equitable grounds, to compel a conveyance of title derived from a certification by the government is not a suit to cancel the certification. See *United States* v. *New Orleans Pacific Ry.*, 248 U. S. 507, 510, 518.

We hold that the acquisition of the title of the lands by the Land Company as set out in the bill was in violation of equitable principles and of the decree enjoining the defendants in the first suit " from setting up or making any claim to the premises," and that a proper case was stated for the imposition on both petitioners of a constructive trust with respect to the lands acquired by them. As the bill is not well drafted, respondent should have leave to perfect it. This will promote an orderly and intelligent disposition of the case.

*Affirmed.*

MR. JUSTICE MCREYNOLDS, MR. JUSTICE SUTHERLAND, and MR. JUSTICE BUTLER dissent.