## BANCROFT TRUST CO. v. FEDERAL NAT. BANK OF BOSTON et al., and three other cases.

Nos. 3891, 3892, 3894, 3939.

District Court, D. Massachusetts.

Dec. 8, 1934.

---

[1] Summary.

La Rue Brown, Horace P. Moulton, Brown, Field & McCarthy, Neil Leonard, Burnham, Bingham, Pillsbury, Dana & Gould, and Alfred P. Lowell, all of Boston, Mass., for plaintiffs.

Henry Parkman, Jr., John C. Coughlin, Parkman, Robbins, Coughlin & Hannan, J. L. Hannan, Parkman, Coughlin & Hannan, and Haven Parker, all of Boston, Mass., for defendants.

BREWSTER, District Judge.

The above suits in equity are brought against the Federal National Bank of Boston and its receiver by the Massachusetts bank commissioner, as liquidating agent of four Massachusetts trust companies. They come before the court upon motions to dismiss.

The substantive allegations in the several bills of complaint are similar. They differ in details only. In each of them the plaintiff seeks discovery; and an accounting, and also seeks to impress a trust upon certain assets in the hands of the receiver. The motions to dismiss deny that the plaintiff is without an adequate remedy at law, and that a trust can be established upon the allegations of the bills. The ultimate facts alleged, summarized as briefly as possible, are these:

1. That the Federal National Bank (hereinafter referred to as the bank) obtained dominion and control over the affairs and acts of the several trust companies (hereinafter referred to as trust companies) to such an extent that it was able to induce, direct, and command the officers of the trust companies to do the bidding of the officers of the bank.

2. That this control was acquired through the means of a holding trust and a voting trust, controlled and managed by the bank and its nominees.

3. That the bank, in the exercise of its control over the trust companies, so manipulated the deposits and assets of the several savings departments of the trust companies that the assets of the bank were unduly augmented and those of the savings departments of the trust companies correspondingly depleted.

4. That the means employed to this end were to cause the transfer of sound assets, securities, and cash from the savings departments of the trust companies to the bank in order to build up the deposits of the several trust companies in the bank, and thereafter to direct the trust companies to grant loans to irresponsible borrowers upon worthless, or insufficient, securities, and to apply the proceeds of these loans, directly or indirectly, for the purposes and to the advantage of the bank.

The transactions complained of fall into three general classes: The first, where the bank applied the proceeds of the improvident loan to the payment of inadequately secured notes held by the bank; the second class involves similar transactions except that the original obligation was not held by the bank but by some other bank or trust company, the stock of which was owned by, or constituted the security for a note owned by, the bank; and the third class comprised cases where improvident loans were made in order that the proceeds might be used to artificially maintain the market price of the stock of the bank.

5. That some of the acts were without authority or knowledge of the boards of directors of the trust companies, and that acts when authorized were acted upon without knowledge of the true character or purpose of the transactions.

6. That, in thus building up the deposits of the trust companies in the bank, the amount of the deposits on divers occasions was in excess of the amounts allowed by the laws of Massachusetts governing the deposits by savings departments in other banks.

7. That assets transferred by the trust companies to the bank, in connection with the transactions above described, in some instances came into the hands of the receiv-

er, and that other funds upon which the plaintiff seeks to impress a trust are traceable to the receiver.

■ It is settled law in Massachusetts that the assets of the savings departments of trust companies are to be regarded as trust funds, Bachrach v. Commissioner of Banks, 239, Mass. 272, 131 N. E. 857; Kelly v. Commissioner of Banks, 239 Mass. 298, 131 N. E. 855; Petition of Commissioner of Banks (In re Prudential Trust Company), 240 Mass. 478, 134 N. E. 253; Brogna v. Commissioner of Banks, 248 Mass. 241, 142 N. E. 746; and that the officers of a trust company are, by the laws of Massachusetts, held to occupy the position of a trustee with respect to such savings departments, Cosmopolitan Trust Co. v. Mitchell, 242 Mass. 95, 136 N. E. 403; Prudential Trust Co. v. McCarter, 271 Mass. 132, 171 N. E. 42.

■ The officers of such trust companies are held to a high degree of good faith and diligence in dealing with the deposits in the savings account, and they have been held to be derelict in their duties if they failed to themselves direct the affairs of the trust companies or delegated these duties to others. Prudential Trust Company v. McCarter, supra; Dome Realty Co. v. Rottenberg (Mass.) 189 N. E. 70.

The allegations of the bills, if proved, would warrant the conclusion that the bank was a party to transactions which, if not fraudulent, would at least constitute a breach of trust on the part of those charged with administering the affairs of the trust companies.

These allegations also would compel the conclusion that the bank, by indirect means and subterfuge, obtained control of the trust companies as effectually as if it owned outright the capital stock of the several trust companies.

■ The real gist of plaintiff's asserted rights to equitable relief lies in the proposition, thus stated in plaintiff's brief, that "one in domination or control of a corporation can not take advantage of his controlling power to profit by appropriating for himself the assets of a corporation, either for an inadequate consideration, or for none at all.":

This statement seems to have the support of abundant authority. Chicago, Milwaukee & St. P. Ry. v. Des Moines Union Ry., 254 U. S. 196, 212, 41 S. Ct. 81, 65 L. Ed. 219; Wheeler v. Abilene National Bank Bldg. Co. (C. C. A.). 159 F. 391, 16 L. R. A. (N. S.)

892, 14, Ann. Cas. 917; Heffern Co-op. Consol. Gold M. & M. v. Gauthier, 22 Ariz. 67, 193 P. 1021.

In these cases the courts consider the powers of majority stockholders in corporations. These cases are authority for the doctrine that even majority stockholders in control cannot exert their powers to the detriment of minority stockholders. Elliott v. Baker, 194 Mass. 518, 523, 80 N. E. 450; Petition of Allen-Foster-Willett Co., 227 Mass. 551, 116 N. E. 875.

If stockholders in control of a business corporation are charged with a duty to exercise good faith and diligence in the use of their powers of domination and control, a fortiori, a stockholder in a trust company must be held to a high degree of good faith in dealing with the savings of depositors in the savings department of a trust company. Any misuse of such deposits, detrimental to the depositors and profitable to the shareholders, will be condemned in equity.

Buffum v. Peter Barceloux Co., 289 U. S. 227, 53 S. Ct. 539, 77 L. Ed. 1140, was a case where a fraudulent grantee was held to account as a trustee ex maleficio for the value of shares which it had fraudulently acquired. The court, speaking through Mr. Justice Cardozo, said: "The implication of a trust is the implication of every duty proper to a trust. Equity has its distinctive standards of fidelity and honor, higher at times than the standards of the market place. * * * Whoever is a fiduciary or in conscience chargeable as a fiduciary is expected to live up to them." The court further observed that the standard of duty was the same whether the trust was actual or constructive.

■ The allegations of the bills are sufficient to place the bank in a position of a trustee ex maleficio.

It follows that the plaintiff may properly invoke the equity jurisdiction of the court to enforce a constructive trust upon assets traced into the hands of the trustee, and for an accounting respecting the consequences of the breach of trust. Buffum v. Peter Barceloux Co., supra; United States v. Dunn, 268 U. S. 121, 45 S. Ct. 451, 69 L. Ed. 876.

■ Equity will follow the property until it reaches the hand of an innocent purchaser for value. Independent Coal & Coke Co. v. United States, 274 U. S. 640, 647, 47 S. Ct. 714, 71 L. Ed. 1270.

It is objected that the bank cannot be called to account for these alleged transactions, inasmuch as it did not directly own stock in the several trust companies. The defendant argues that the relation between the bank and the trust companies was at all times only that of debtor and creditor, and that it was not chargeable with any fiduciary duty in the premises. This contention places form ahead of substance. The dominance of the bank was just as complete, its control just as effective, as it would have been had it held a majority of the stock in each trust company. The essential element is the fact of domination. How the power may have been acquired is relatively unimportant. It is argued also that it would have been ultra vires for the bank to have owned indirectly a controlling interest in the trust companies. Conceding this argument to be sound, as it undoubtedly is, it still does not preclude the plaintiff from resorting to the court for relief. The defense of ultra vires cannot be set up against liability founded upon fraud. First National Bank v. Graham, 100 U. S. 699, 25 L. Ed. 750; Chesapeake & Ohio Ry. Co. v. Howard, 178 U. S. 153, 20 S. Ct. 880, 44 L. Ed. 1015; Washington Gas Light Co. v. Lansden, 172 U. S. 534, 19 S. Ct. 296, 43 L. Ed. 543.

The receiver further contends that no constructive trust can arise because the assets of the bank were not augmented by the transactions. As a general proposition, such augmentation is regarded as necessary. In the suits at bar, however, there are allegations that the assets of the bank were augmented and the amount of such augmentation specifically alleged. It cannot be said, as a matter of law, that these allegations are without support of subsidiary facts alleged. When the bank exchanged worthless notes and collateral for cash or credits transferred to the bank from the savings departments of the trust companies, the assets of the bank were in each instance augmented to the extent of such worthless notes or collateral.

The defendant has also advanced as a defense a Massachusetts statute (G. L. Mass. c. 107, § 46), which provides that banks shall not be liable to depositors upon forged or unauthorized negotiable instruments unless notice is given within one year after the return of the instrument to such depositor. It is my opinion that this statute has no application to the suits at bar. Prudential Trust Co. v. McCarter, supra. Plaintiff is not seeking to assert any rights of a trust company upon any negotiable instrument.

He is merely seeking to enforce the liability of a fiduciary who has been guilty of a breach of trust.

Whether the transactions complained of amount to a breach of trust would ordinarily be a question of fact, to be determined only after a full presentation of the evidence. Prudential Trust Co. v. McCarter, supra, at page 138 of 271 Mass., 171 N. E. 42. The same is true with regard to the tracing and identifying of the trust res.

Having reached the conclusion that the court has jurisdiction over the matters alleged in the bills of complaint, it is not necessary at this stage to pass upon the subsidiary questions raised and argued. Whether the Massachusetts statute limiting deposits of savings banks in national banks applies to savings departments of trust companies, and what are the legal consequences of violation of the statute, are questions which I leave open for consideration when the cases are heard upon their merits.

The several motions to dismiss are therefore denied.