This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, Robert J. Sampson, appeals a jury verdict in the Summit County Court of Common Pleas that awarded damages to Plaintiffs-appellees, William and Lori Sargeant, and recognized the existence of an implied easement benefiting Appellees' property. We affirm.
 I.
Prior to 1949, Mr. Frank Flower owned a one hundred sixty-six acre farm located on Barlow Road in Hudson, Ohio. In 1949, Mr. Flower sold one hundred twenty-two acres to Leland and Ellen Treap. Flower retained the remaining forty-four acres. In 1951, his brother, Horace Flower, purchased this forty-four acres. From 1951 to 1960, Horace Flowers farmed celery and other small crops on the property. In 1960, he sold the land to Kent Produce. Karl Schwarz and Horst Duwe purchased the land in 1963 and farmed sod on the property from 1963 to 1972. In 1972, Schwarz and Duwe sold the land to Appellant, the current owner. Appellant used the property primarily for growing sod, but also raised ostriches.
The land purchased by Leland Treap in 1949 is located to the west and south of Appellant's forty-four acres. This parcel had frontage of approximately one thousand feet on Barlow Road. Treap's home was located on the western portion of the property, along with a barn. He used the property for growing hay and corn, as well as maintaining a small herd of cattle. In 1993, Treap gave approximately twenty-eight acres of his property to his daughter, Carol Wrobel. This parcel adjoined the property owned by Appellant. Prior to the transfer of the property from Treap to Wrobel, Treap had an arrangement with Appellant whereby Appellant would farm sod on a portion of the twenty-eight acres in return for a portion of the proceeds. Treap also received the benefit of an agricultural tax reduction. Appellant did not have an explicit agreement with Wrobel to continue farming sod on the property after it changed hands.
Because the parcel transferred to Wrobel did not have frontage on Barlow Road, Treap also granted her a fifty-foot easement that connected her property to the road. A gravel driveway intersects Barlow road at approximately where Appellant's property and the easement meet. The driveway weaves across the property line and sits entirely on the easement property until the drive hits Mud Brook. The driveway then crosses the brook via a bridge that is constructed partially on the easement property, but primarily on Appellant's land. On the other side of the bridge, the drive runs entirely across Appellant's land before swerving sharply onto the easement property again. After running entirely on the easement property, the drive again turns onto Appellant's land. As the twenty-eight acre parcel given to Wrobel fans out into a wedge shape, portions of the drive are on both sides of the property line.
In 1996, Wrobel attempted to use the driveway to access her land, but she found that Appellant, who had continued to farm some sod on the land now owned by Wrobel, had installed a new lock on a metal gate that secured the drive. Wrobel cut the lock and then drove back to her property. This happened several times. Eventually, Appellant blocked the driveway with a van, completely obstructing access. Wrobel contacted an attorney, who then sent a letter to Appellant demanding that he grant access to the driveway and stop his farming activities on Wrobel's land. Wrobel filed suit against Appellant, who also filed a counterclaim.
At that time, Wrobel's plans to construct a home on the property fell through, and she placed the property on the market. Appellees made an offer on the property, contingent on resolution of the lawsuit pending between Wrobel and Appellant. Wrobel dismissed her claims against Appellant, and the sale was completed. After closing, Appellees approached Appellant about using the bridge and driveway to access their property, but the parties were unable to reach an agreement. Appellees filed an action against Appellant to quiet title to the driveway and bridge; to enjoin Appellant from farming on the property and from interfering with Appellees' access to the property; and for damages resulting from their inability to construct a home and to otherwise make use of the land. Appellant counterclaimed, alleging that he had planted sod on the property pursuant to an agreement with Treap and/or Wrobel and that Appellees had prevented him from harvesting his crop.
Appellees were granted a preliminary injunction, and the case proceeded to jury trial. The trial court granted a directed verdict to Appellant on Appellees' claims that he had continued to trespass onto the property to harvest sod and that Appellees had a prescriptive easement on the bridge and driveway. The court dismissed Appellant's counterclaim, sua sponte, before submitting the case to the jury. Appellees' claim that they had an easement implied from existing use was submitted to the jury with interrogatories. The jury returned a verdict for Appellees for $10,500 and concluded that Appellees had established the elements of an implied easement. Accordingly, the trial court declared an easement for ingress and egress via the driveway and bridge for the benefit of Appellees' property. Appellant timely appealed and has raised five assignments of error.
 II. ASSIGNMENT OF ERROR I
The trial court erred in finding that an implied easement of use existed for the [Appellees'] property on the [Appellant's] property as there exists no evidence to support a finding that the easement existed when the property was severed.
In his first assignment of error, Appellant argues that the trial court's judgment was against the manifest weight of the evidence. Specifically, he has argued that there was no evidence that a use existed prior to the severance of the property in the transfer from Frank Flower to Leland Treap.
This court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence. Lagasse v. Yaeger (Sept. 9, 1998), Lorain App. No. 97CA006774, unreported, at 3; Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. We must, therefore:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.
 Lagasse, supra, at 4, quoting State v. Otten (1986), 33 Ohio App.3d 339,340.
An implied easement of use arises from the severance of property and transfer of land that at one time had a common owner, with the use in question in existence prior to severance.Campbell v. Great Miami Aerie (1984), 15 Ohio St.3d 79, 80-81, quoting Ciski v. Wentworth (1930), 122 Ohio St. 487, paragraph one of the syllabus. The implication of an easement rests on the theory that the transfer of property includes in the conveyance everything that is necessary for the beneficial use and enjoyment of the property conveyed and excludes those things necessary for the beneficial use and enjoyment of any property retained.Trattar v. Rausch (1950), 154 Ohio St. 286, paragraph four of the syllabus. Therefore:
 Where an owner of two parcels of land subjects one of them to an easement in favor of the other and where such owner sells the dominant parcel without providing for that easement in his grant and where the enjoyment of such easement is reasonably necessary to the beneficial enjoyment of the parcel granted, the grant of such an easement may be implied.
 Renner v. Johnson (1965), 2 Ohio St.2d 195, paragraph one of the syllabus. To establish an implied easement of use, the preexisting use must be continuous, apparent, permanent, and necessary. Trattar v. Rausch, 154 Ohio St.2d at paragraph five of the syllabus.
At trial, Leland Treap testified that the driveway and the bridge near Barlow Road were in existence in 1949 when the property was partitioned. Treap also stated that Flower had used the bridge to access the property now owned by the Sargeants and that he began to use the bridge for the same purpose following the transfer. He stated that he used the bridge and the drive regularly throughout the year to access farmland on this parcel. He testified that, because of a hill that rises to the south of Barlow Road, this drive is the only logical way to access the property. Lori Sargeant, the current owner, concurred. She testified that the curves in the creek bed of Mud Brook, combined with the contours of the land, would make construction of a bridge entirely on her easement extremely difficult. Treap noted that when the bridge was damaged by a construction vehicle in the 1950s, it was placed in its current location because that was the only place where it could be constructed without crossing the creek at an angle. Treap and his family testified that they continued to use the bridge and driveway from 1949 to 1996. The Treaps recalled that, when a lock was installed on the gate crossing the driveway, they were provided with a key, and their access continued. The family was provided with the combination when Sampson changed to a combination lock. Donald Treap and his brothers used the driveway to access the property by motorcycle and for autumn hayrides.
Appellant has argued that Treap's testimony is directly contradicted by the testimony of Horace Flower, who purchased his brother's land in 1951. Mr. Flower stated that there was no bridge near Barlow Road when he took possession of the property. He stated that he built the bridge at issue in 1952. He also stated that Treap had his own series of bridges that he used to access high pasture land located on the property. Schwarz testified that he did not give Treap a key to the gate until Treap requested one in order to harvest a corn crop; that he was surprised by Treap's request; and that the key was never returned. He observed that Treap's use of the driveway and bridge were infrequent. Appellant contradicted the Treaps' testimony that they were given keys to the gate.
While there are inconsistencies in the testimony presented at trial, "[o]n the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. Wolery
(1976), 46 Ohio St.2d 316, 331, quoting State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. We will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony to another. See State v.Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. This court will only reverse a judgment based on the manifest weight of the evidence in the exceptional case, where the judgment is "so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice." Hardiman v. Zep Mfg.Co. (1984), 14 Ohio App.3d 222, 226, quoting Royer v. Bd. of Edn. (1977), 51 Ohio App.2d 17, 20. This is not such a case. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
The trial court erred in failing to instruct the jury on [Appellant's] status as a bona fide purchaser when [Appellant] properly requested such instruction.
 ASSIGNMENT OF ERROR III
[Appellees'] claim is outside the applicable statute of limitations.
In his second and third assignments of error, Appellant argues that Appellees' claim was barred by the bona fide purchaser defense and the statute of limitations.
Civ.R. 8(C) provides that affirmative defenses must be set forth affirmatively in the pleadings. Affirmative defenses, other than those enumerated in Civ.R. 12(B)(6), are waived if not raised in the pleadings or by amendment to the pleadings. Jim's SteakHouse, Inc. v. Cleveland (1998), 81 Ohio St.3d 18, 20. In addition to the defenses enumerated in Civ.R. 8(C), an affirmative defense exists whenever, assuming the allegations of a complaint to be true, a defendant can nonetheless assert the new matter as a defense. State ex rel. The Plain Dealer Publishing Co. v.Cleveland (1996), 75 Ohio St.3d 31, 33, holding modified on other grounds, Jim's Steak House, Inc. v. Cleveland,81 Ohio St.3d at 20.
"A statute of limitations is an affirmative defense that is waived unless pled in a timely manner." State ex rel. Tubbs Jonesv. Suster (1998), 84 Ohio St.3d 70, 75. Similarly, status as a bona fide purchaser is a defense against the enforcement of an implied easement. See Renner v. Johnson (1965), 2 Ohio St.2d 195, paragraph three of the syllabus. As such, the right to protection as a bona fide purchaser must be pled in accordance with Civ.R. 8(C). Ferguson v. Zimmerman (Jan. 16, 1986), Montgomery App. No. 9426, unreported, 1986 Ohio App. LEXIS 5343, at *17. See, also,Independent Coal Coke Co. v. United States (1927),274 U.S. 640, 650, 71 L.Ed. 1270, 1278; Elstner v. Fife (1877),32 Ohio St. 358, 372.
Appellant did not plead either the statute of limitations or his status as a bona fide purchaser.[1] As such, these defenses were waived. Appellant's second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR IV
There exists insufficient evidence to support the jury's verdict on the issue of damages awarded to the [Appellees].
In his fourth assignment of error, Appellant has argued that the jury's award of damages in the amount of $10,500 was not supported by sufficient evidence. We disagree. At trial, Lori Sargeant testified that she had paid a total of $21,035 toward her current mortgage during the delay in the construction of her new home on the property in question. She also stated that she incurred boarding costs for her family's horses of $20,700 for the period of the delay. Therefore, there was sufficient evidence before the jury to justify damages of $10,500. Appellant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V
The trial court erred in failing to instruct the jury on [Appellant's] counter-claim for conversion of his sod crop.
In his final assignment of error, Appellant appears to have argued that the trial court improperly dismissed his counterclaimsua sponte before the case was submitted to the jury.
Appellant was responsible for providing this court with "an argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities * * * on which appellant relies." App.R. 16(A)(7). In addition, Loc.R. 7(A)(6) requires an appellant to state the standard of review applicable to each error assigned. While Appellant has mentioned in passing one case that the trial court relied upon in reaching its factual conclusion, he has not supported his argument that the trial court erred by dismissing the case sua sponte with any legal authority. Accordingly, we need not address this assignment of error. See App.R. 12(A)(2). Appellant's fifth assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
FOR THE COURT
CACIOPPO, J. CONCURS
[1] Following the verdict, Appellant moved to amend the pleadings to conform to the evidence by including the statute of limitations and bona fide purchaser defenses. He also moved for judgment notwithstanding the verdict. While these motions were pending before the trial court, Appellant filed the notice of appeal. The trial court determined that it lacked jurisdiction to rule on the motions. This court granted a stay of the appeal and remanded the case to the trial court; the trial court, however, did not rule on the motions. Under these circumstances, the motions are presumed denied. See Mancino v. Lakewood (1987),36 Ohio App.3d 219, 222.